STATE OF NORTH CAROLINA v. CARL GLENN LOCKLEAR (ALIAS SAMMY LOCKLEAR) AND LEON GALBREATH

No. 32

(Filed 1 December 1981)

**Crime Against Nature § 3— first degree sexual offense—evidence sufficient**

The evidence was sufficient to convict defendants of a first degree sexual offense under G.S. 14-27.4 where the evidence tended to show that the prosecuting witness was placed in a small jail cell with the defendants, Galbreath and Locklear; that Galbreath threatened him with a violent death if he did not perform fellatio upon him; that Locklear, at Galbreath's direction, struck him with a belt buckle and grabbed him in a dangerous, life threatening "sleeper" hold; and that the prosecuting witness performed the acts of fellatio on both Galbreath and Locklear because "they threatened to kill me." The described evidence was sufficient to prove that (1) the defendants engaged in a "sexual act" as defined by G.S. 14-27.1(4), (2) "by force and against the will" of the victim, and (3) each defendant was aided and abetted by one or more other persons.

BEFORE *Judge Coy E. Brewer, Jr.,* presiding at the 6 January 1981 Session of ROBESON Superior Court, and a jury, defendants were tried on indictments proper in form[1] and were found guilty of first degree sexual offenses. Each defendant received the mandatory sentence of life imprisonment and appeals of right pursuant to G.S. 7A-27(a).

---

1. The indictments were drawn pursuant to and were sufficient under the terms of G.S. 15-144.2.

*Rufus L. Edmisten, Attorney General, by W. A. Raney, Jr., Special Deputy Attorney General, and G. Criston Windham, Associate Attorney, for the State.*

*H. Mitchell Baker III, Attorney for defendant appellant Leon Galbreath.*

*Robert D. Jacobson, Attorney for defendant appellant Carl Glenn Locklear.*

EXUM, Justice.

Both defendants in this consolidated appeal challenge the sufficiency of the state's evidence on each element of a first degree sexual offense. We conclude the evidence was sufficient and the trial court properly denied defendants' motions to dismiss for evidentiary insufficiency.

At trial, the victim and the state's principal witness, John Oliver, a 17-year-old resident of Florida, testified as follows:

He was arrested for the larceny of gasoline on I-95 in Robeson County on Tuesday, 16 September 1980. He was placed in a small cell at the Robeson County jail with three other young offenders—defendant Galbreath, defendant Locklear, and Curtis Malloy. The cell was locked for the night at 9:00 p.m. Galbreath told Oliver to perform fallatio on Galbreath. Oliver refused, and Galbreath yelled to Locklear to "get him." Locklear hit Oliver on the foot with a belt and buckle. Oliver again refused, so Locklear grabbed him around the neck in a "sleeper" hold so that he could not breathe momentarily. Then Locklear released Oliver and asked, "Are you going to do it now?" Oliver replied, "Yes, I guess I have to now, or you're going to kill me." Galbreath had earlier told him, "If you don't do it, I'm going to throw you off this top bunk and make you bust your head in the toilet and everybody will think you died as a result of rolling off the top bunk and busting your neck on the toilet that night."

After Locklear released him, Oliver climbed back on the bunk where he was joined by Galbreath. Oliver performed fellatio on Galbreath. When Galbreath jumped down from the bunk Malloy followed him and Oliver performed fellatio on Malloy. When Locklear jumped on the bunk Oliver refused, and Locklear struck

him with a shoe across his leg. Oliver then performed fellatio on Locklear. Thereafter all three cellmates required Oliver to perform fellatio on them a second time that night.

The following day, Wednesday, 17 September 1980, a fifth person, Christopher McCallum, was added to the cell. Galbreath and Locklear again required Oliver to perform fellatio on them, but Malloy and McCallum did not participate.

On Thursday, 18 September 1980, Oliver was forced to fight with another inmate, "Stoney," for thirty to forty-five minutes. He suffered swelling and abrasions of his face, nose, left eye, and lips. Then he was compelled to wash the clothes of other inmates. Subsequently, while showering after the fight he was attacked by Locklear who pushed him in the corner and turned on the hot water all the way. When Oliver pushed him out of the shower Locklear responded by hitting him in the face five times causing Oliver's eye to swell.

Although trustees were present and jailers came through the cell block three or four times during the days he was in jail, Oliver said nothing to them of the various assaults because he was afraid and because he did not believe the jailer would move him out of the cell. His only contact with the jailers was in the presence of other inmates. He performed the acts of fellatio because "they threatened to kill me."

Oliver was taken from the jail on Friday, 19 September 1980, to go to court. After arriving at the courthouse he called to Kenneth Sealy, an officer with the Robeson County Sheriff's Department, who had him taken out of the jail box. Oliver told Sealy and Deputy Sheriff Lum Edwards about the sexual and other assaults.

Sealy testified that he noted Oliver's swollen nose, black eye, scratched and bruised chest and back. The mark on his chest was "reddish looking." Sealy contacted Chief Jailer Austin George who in turn contacted the Sheriff.

Oliver returned from court and was taken to the cell block by the Sheriff and jailer to identify those who had assaulted him. He identified Galbreath, Locklear, and Malloy.

Oliver's testimony was corroborated by the testimony of Curtis Malloy and Christopher McCallum. Their testimony generally

tended to show that Oliver was unwilling to perform fellatio on either Locklear or Galbreath, but that he did so because of fear engendered by the assaults and threats of the two defendants acting together.

Oliver clearly identified Galbreath and Malloy at trial. He was unable to recognize Locklear; however, Malloy, Sealy, George, and Edwards all testified that Locklear's appearance at trial was different from his appearance in September 1980 because he had grown his hair longer and was wearing it differently. A photograph of Locklear which reflected his appearance in September 1980 was used to illustrate these differences for the jury. Furthermore, Oliver had not seen Locklear from September 1980 to the time of trial.

Each defendant testified in his own defense, but neither offered other witnesses. Defendant Galbreath denied participating in any act of fellatio with Oliver and said that Oliver willingly performed fellatio on McCallum and Malloy. Locklear also denied having fellatio with Oliver. He said that Malloy made Oliver perform fellatio on Malloy. Locklear claimed the Sheriff put Oliver, Malloy, and McCallum up to their testimony because the Sheriff bore a grudge against him.

In rebuttal the state offered pre-trial statements of Galbreath and Locklear which contradicted in some respects their testimony at trial.

Defendants assert the state has failed to present sufficient evidence of all elements of a first degree sexual offense. They challenged the sufficiency of the evidence at trial by various motions for dismissal, directed verdicts, and nonsuit. We conclude the trial court properly denied all such motions.

The test of the sufficiency of the evidence in a criminal action is the same whether the motion raising that issue is one for dismissal, directed verdict or judgment of nonsuit. *See, e.g., State v. Powell*, 299 N.C. 95, 98, 261 S.E. 2d 114, 117 (1980); *State v. Hunt*, 289 N.C. 403, 407, 222 S.E. 2d 234, *death sentence vacated*, 429 U.S. 809 (1976). That test has been articulated by the United States Supreme Court as whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). (Emphasis original.) This Court has held that its traditional formulation of the test is the same in substance as that given in *Jackson. State v. Jones,* 303 N.C. 500, 504-05, 279 S.E. 2d 835, 838 (1981). Although our cases may have occasionally employed different language, in substance our test is that "there must be substantial evidence of all material elements of the offense" in order to create a jury question on defendant's guilt or innocence. *Id.* In ruling on this question, "[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion." *State v. Powell, supra,* 299 N.C. at 99, 261 S.E. 2d at 117.

There are several legal theories by which a defendant may be convicted of a first degree sexual offense under G.S. 14-27.4. The state may prove that "(1) the defendant engaged in a 'sexual act,' (2) the victim was at the time of the act twelve years old or less, and (3) the defendant was at that time four or more years older than the victim." *State v. Ludlum,* 303 N.C. 666, 667, 281 S.E. 2d 159, 159-60 (1981). In the alternative the state may prove that (1) the defendant engaged in a "sexual act," (2) "by force and against the will" of the victim, and (3) in the language of the statute, either

> "a. Employ[ed] or display[ed] a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or

> "b. Inflict[ed] serious personal injury upon the victim or another person; or

> "c. [Was] aided and abetted by one or more other persons."

General Statute 14-27.1(4) defines "sexual act" to mean, among other things, "cunnilingus, fellatio, analingus, or anal intercourse, but . . . not . . . vaginal intercourse." "Once the victim of one of

these acts has been forced against his or her will to submit, the degradation to his or her person, the real evil against which the statutes speak, has been accomplished." *State v. Ludlum, supra,* --- N.C. at ---, 281 S.E. 2d at 163.

In the instant case the victim, Oliver, was over twelve years of age. There is no evidence that a deadly weapon was employed at all or that the personal injuries Oliver suffered were inflicted during the commission of the sexual acts. There is no evidence that any sexual act other than fellatio was committed.

There is, however, in the case against Locklear substantial evidence that he induced Oliver to perform fellatio by force and against Oliver's will, and that Locklear was aided and abetted by Galbreath. Likewise in the case against Galbreath there is substantial evidence that Galbreath induced Oliver to perform fellatio by force and against Oliver's will and that Galbreath was aided and abetted by Locklear.

Rape, at common law, was the carnal knowledge of, or sexual intercourse with, a female person "by force and against her will." *State v. Hines,* 286 N.C. 377, 380, 211 S.E. 2d 201, 203 (1975); *accord, State v. Burns,* 287 N.C. 102, 116, 214 S.E. 2d 56, 65, *cert. denied,* 423 U.S. 933 (1975). When by Act of Apr. 8, 1974, ch. 1201, 1973 N.C. Session Laws (2nd Sess. 1974) (originally codified as G.S. 14-21), the legislature divided the crime into two degrees, the statute codified the common law requirements that the sexual act of vaginal intercourse be forcible and without the consent of the woman by using the language "by force and against her will." This legislative act did not change this aspect of the common law definition of rape. *State v. Perry,* 291 N.C. 586, 231 S.E. 2d 262 (1977). The legislature continued to use the phrase, "by force and against the will," when it provided for new distinctions between first and second degree rape in what is now codified as G.S. 14-27.2 and 14-27.3. The legislature used this same phrase in the statutes defining first and second degree sexual offenses, G.S. 14-27.4 and 14-27.5. This phrase as used in all these statutes means the same as it did at common law when it was used to describe some of the elements of rape.

At common law, furthermore, "[t]he force necessary to constitute rape need not be physical force. Fear, fright, or coercion may take the place of force." *State v. Hines, supra,* 286 N.C. at

380, 211 S.E. 2d at 203. "A threat of serious bodily harm which reasonably induces fear thereof constitutes the requisite force and negates consent." *State v. Burns, supra,* 287 N.C. at 116, 214 S.E. 2d at 56.

Likewise under our sexual offense statutes, actual physical force is not required to satisfy the statutory requirement that the sexual act be committed "by force and against the will" of the victim. Fear of serious bodily harm reasonably engendered by threats or other actions of a defendant and which causes the victim to consent to the sexual act takes the place of force and negates the consent.

Here the state's evidence shows that before Oliver performed fellatio on either Galbreath or Locklear, he was first placed in a small jail cell with them who were strangers to him and from which he could not escape. Galbreath threatened him with a violent death if he did not perform the act. Locklear, at Galbreath's direction, struck him with a belt buckle and grabbed him in a dangerous, life threatening "sleeper" hold. Oliver testified that he thought Locklear was going to kill him and that he performed the acts of fellatio on both Galbreath and Locklear because "they threatened to kill me." From this evidence a rational jury could find beyond a reasonable doubt that Oliver performed the sexual acts in question out of fear of death or serious bodily harm reasonably engendered by the threats of Galbreath and the actions of Locklear. As to both defendants then, the state's evidence is sufficient to be considered by the jury on the statutory requirement that the sexual act be committed "by force and against the will" of the victim.

This evidence is likewise sufficient to permit the jury to find that each defendant was being aided and abetted by the other at the time Oliver performed fellatio on each. "An aider or abettor is a person who is actually or constructively present at the scene of the crime and who aids, advises, counsels, instigates, or encourages another to commit the offense." *State v. Barnette,* 304 N.C. 447, 284 S.E. 2d 298 (1981). The state's evidence is sufficient to permit a rational jury to find that each defendant was present when the act of fellatio was committed on the other and that each defendant had actively encouraged and aided the other immediately before these acts were committed on both. Indeed the

jury could reasonably infer that the cause of Oliver's fear which induced him to perform the acts was the very fact that the two defendants had decided to combine their efforts to force him to comply with their wishes. The defendants, according to the state's evidence, acted together, each aiding and abetting the other to induce the fear in Oliver that caused him to acquiesce in their desires and to perform the acts of fellatio first on one defendant and then on the other. There is, therefore, substantial evidence from which a rational jury could find beyond a reasonable doubt that each defendant immediately before the sexual act was committed on him was aided and abetted by the other in forcing the victim, Oliver, to commit the act. The state's evidence, therefore, was enough to permit the jury to determine that the aiding and abetting element, required by the statute, was present.

Defendants next assign as error the failure of the trial judge to allow their motions to set aside the verdict and order a new trial. We find no cause to upset this ruling which was well within the prerogative of the trial judge.

No error.