STATE OF NORTH CAROLINA v. BOBBY ALLEN RAINES

No. 8428SC194

(Filed 15 January 1985)

**1. Rape § 1— physical force—more required than sexual act itself**

Physical force as that phrase is generally understood in sexual offense and kindred cases requires more than the physical touching which constitutes the sexual act itself.

**2. Rape § 5— patient allegedly raped by nurse—insufficient evidence of physical or constructive force**

In a prosecution of defendant nurse for second degree rape and second degree sexual offense of one of the patients under his care, the trial court erred in denying defendant's motion to dismiss where there was no evidence of physical force or constructive force which could reasonably and understandably generate fear in the prosecuting witness, nor was she physically helpless.

APPEAL by defendant from *Lewis, Judge.* Judgment entered 31 October 1983 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 18 October 1984.

*Attorney General Rufus Edmisten, by Assistant Attorney General Alfred N. Salley, for the State.*

*Elmore & Powell, P.A., by Bruce A. Elmore, Sr. and Ronald W. Mack, for defendant appellant.*

BECTON, Judge.

The defendant, Bobby Allen Raines, a charge nurse at Memorial Mission Hospital in Asheville, North Carolina, was charged with second-degree rape and second-degree sexual offense of one of the patients under his care. The trial court submitted the case to the jury on alternative theories that the defendant raped and committed a second-degree sexual offense on the victim: (1) "by force and against her will" or (2) who was "physically helpless." The defendant was found not guilty of rape; however, the jury convicted the defendant of the second-degree sexual offense "by force and against her will" and found that the victim was not "physically helpless." From a judgment imposing the presumptive sentence of twelve years for the Class D felony, defendant appeals.

I

The prosecuting witness was admitted to the emergency room of Memorial Mission Hospital on 13 July 1983 at approximately 10:00 a.m. with migraine headaches. Later, she was transferred to the intensive care unit because she was extremely nauseated and having seizures. At all relevant times, she was "hooked up" to an I.V. and to heart monitoring equipment.

When the defendant first saw the prosecuting witness at approximately 7:15 p.m., she was vomiting, and, according to the defendant, he gave her an injection of torecan, an anti-nausea drug, although he did not note this on the patient's chart nor report it to his head nurse the following morning.

The prosecuting witness suggested that twice during the night the defendant put something in her I.V. which caused a burning sensation, and testified that defendant thereafter twice placed his hand in her vagina and attempted to rape her, succeeding the second time. The prosecuting witness admitted that she never saw the defendant give her an injection and that she merely saw him stand over her with his hands "in a position on the I.V." She did not allege any physical force, nor did she resist his advances in any way. Between the first and second incidents, the prosecuting witness' doctor checked on her, but she did not report the incident to him although she spoke with him. The prosecuting witness denied seeing any nurse other than the defendant in her room.

The defendant admitted that he, as well as two other nurses, purged and adjusted the prosecuting witness' I.V. numerous times and that he took her temperature rectally during the night. Defendant denies injecting her with anything other than an anti-nausea drug and, further, denies making any sexual advances. Two nurses testified, corroborating defendant's testimony concerning purging and adjusting the I.V.

An examination of the prosecuting witness' gown and the bedsheet revealed the presence of sperm. An analysis of the semen on the bedsheet and on her gown showed no A.B.O. reaction and showed a P.G.M. reaction of one. An analysis of the vaginal swabs revealed no A.B.O. or P.G.M. reaction. The prosecutrix's A.B.O. blood type was determined to be O secretor with a P.G.M.

group one. Her husband's A.B.O. type was determined to be O non-secretor, P.G.M. group two-one. The defendant's A.B.O. type was determined to be A non-secretor, P.G.M. one. However, the forensic serologist who testified for the State could draw "no conclusion . . . as to the A.B.O. or P.G.M. blood group of the donor of the semen." The serologist further testified:

A. I cannot say that this individual contributed. I cannot say that this person did contribute the semen that was found.

Q. In fact, sir, wouldn't there be hundreds of millions of men that could have contributed this as far as their body fluids are concerned?

A. Given the results on the bed sheet, as well as on the hospital gown, taking into consideration the population frequency of members of the population that are P.G.M. Group 1, approximately 58 percent of the male population are P.G.M. Group 1.

Q. Thank you. I believe the world population is about four billion right now. Now, the P.G.M. reactions can come from vaginal fluids as well as the male fluid, isn't that right?

A. That is correct.

Q. So it is. And I'll ask you if the P.G.M. reaction that you got on the bed sheet were consistent with her vaginal fluids?

A. The P.G.M. blood group, Type 1 reaction, which was obtained from the bed sheet and the hospital gown is consistent with both Sarah Grindstaff and Bobby Raines.

II

On appeal, defendant contends that the trial court erred: (1) in failing to grant his motion to dismiss because there is no evidence of physical or constructive force; (2) in failing to instruct the jury that before fear, fright, or duress could replace physical force in satisfying the elements of a forcible sexual offense, such fear, fright or duress must have been *reasonably* induced; (3) by instructing the jury that the scientific examination of the semen excluded every male except the defendant; and (4) in failing to instruct the jury that defense counsel's stipulation was merely a chain of custody stipulation and was in no way intended as an ad-

mission to the conclusiveness or effectiveness of the scientific tests.

For the reasons that follow, we reverse.

## III

N.C. Gen. Stat. Sec. 14-27.5 (1981), in pertinent part, provides:

(a) A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person:

(1) By force and against the will of the other person; or

(2) Who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know that the other person is mentally defective, mentally incapacitated, or physically helpless.

[1] *Physical force*, as that phrase is generally understood in sexual offense and kindred cases, was absent in this case. And, we decline to accept the State's invitation to expand the "physical force" doctrine and bring within its ambit the conduct — the physical touching — that constitutes the "sexual act" itself in this case. In other words, we reject the argument set forth in the State's brief that "[a]s to the second-degree sexual offense, the assailant had used the necessary force to complete the act before his victim had an opportunity to resist or even to become frightened . . . [and] should not be heard to say that because he deliberately surprised his victim and attacked her completely without warning" that he is not guilty.

Whether *constructive force*, as the phrase has been judicially interpreted, was present in this case is a more difficult question. The "by force and against the will" language in G.S. Sec. 14-27.5 (1981) comes from the common law definition of rape. "This phrase as used in all these [sexual offense] statutes means the same as it did at common law when it was used to describe some of the elements of rape." *State v. Locklear*, 304 N.C. 534, 539, 284 S.E. 2d 500, 503 (1981). At common law, fear, fright, or coercion could take the place of actual physical force, or, as stated by our Supreme Court: "A threat of serious bodily harm, which reasonably induces fear thereof, constitutes the requisite force and

negates consent." *State v. Burns*, 287 N.C. 102, 116, 214 S.E. 2d 56, 65, *cert. denied*, 423 U.S. 933, 46 L.Ed. 2d 264, 96 S.Ct. 288 (1975).

> Likewise under our sexual offense statutes, actual physical force is not required to satisfy the statutory requirement that the sexual act be committed 'by force and against the will' of the victim. *Fear of serious bodily harm reasonably engendered by threats* or other actions of a defendant *and which causes the victim to consent* to the sexual act takes the place of force and negates the consent. (Emphasis added.)

*State v. Locklear*, 304 N.C. at 540, 284 S.E. 2d at 503.

This long-revered definition of constructive force may explain why the State, in its brief, sought to characterize this case as one involving "physical force" and to summarily respond to, or sidestep, defendant's argument that the evidence of "constructive force" was insufficient to take the case to the jury. Dealing with defendant's argument in one sentence, the State, in its brief, states: "Although the State disagrees with appellant as to whether the victim was reasonably put in fear and as to the effect of the exclusion of the suggested qualifying phrase from the court's charge, it suggests that the question of 'constructive' force does not arise." The State obviously realized that fear, fright, or coercion must be reasonably induced before it can replace actual physical force. Indeed, in every constructive force case cited by the district attorney at trial, there was, at least, a threat of physical force, and, in most of the cases, there was actual physical force which preceded or constituted the threat that further force would follow if the victim would not succumb. *State v. Hines*, 286 N.C. 377, 211 S.E. 2d 201 (1975); *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1969); *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44 (1967); *State v. Carter*, 265 N.C. 626, 144 S.E. 2d 826 (1965); *State v. Thompson*, 227 N.C. 19, 40 S.E. 2d 620 (1946).

In the case before us, there was neither the threat of physical force nor any actual force preceding or constituting a threat. The sexual acts, which the jury found that the defendant committed, were reprehensible and criminal. And, arguably, the legislature intended to include defendant's conduct within the statutory perimeters, but the facts of this case do not neatly fit the "by

fear and against the will" language of G.S. Sec. 14-27.5 (1981). Significantly, the jury, in its special verdict, specifically found that defendant did *not* commit a sexual act on a person who was *physically helpless*. Equally important is the recognition that a genuine threat of force with resulting physical and psychological stress can sometimes be more traumatic than the degrading act it precedes. For example, some would be more traumatized and unnerved by a genuine threat of serious bodily injury to them or their children than by a reprehensible touching of the genitals as on a crowded elevator or in a swimming pool. And the legislature has, in sexual offense cases as well as in other areas of the law, made distinctions and, indeed, gradations, depending on the use or threatened use of force. Most important, however, is N.C. Gen. Stat. Sec. 14-27.7 (1981), which covers felonious sexual activity with a person over whom defendant or his employer had assumed custody. Consent is no defense to a charge under this statute, which, in relevant part, provides that

> if a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a class G felony.

*Id.*

[2] On the peculiar facts of this case in which the jury found defendant not guilty of rape and not guilty of second-degree sexual offense on a person who was "physically helpless," and in which there is no evidence of actual physical force or of constructive force which could reasonably and understandably generate fear in the prosecuting witness, we have determined that the trial court erred in denying the defendant's motion for nonsuit.

IV

It is not necessary to address defendant's remaining assignments of error since they are not likely to arise even if the State elects to proceed against defendant under G.S. Sec. 14-27.7 (1981).

For the reasons stated above, we

Reverse.

Judges HEDRICK and PHILLIPS concur.