STATE OF NORTH CAROLINA v. JOHN BROWN

No. 459PA91

(Filed 4 September 1992)

**1. Rape and Allied Offenses § 5 (NCI3d) — second degree sexual offense — sufficient evidence of force**

There was sufficient evidence to support a reasonable finding that defendant used the force required to sustain his conviction under N.C.G.S. § 14-27.5(a)(1) for second degree sexual offense where the State's evidence tended to show that defendant and his victim were absolute strangers to each other; defendant entered unbidden into the victim's darkened hospital

room in the middle of the night; there he found the female victim suffering from cystic fibrosis and attached to tubing through which she was being administered antibiotics intravenously; the victim's eyes were closed, and defendant had no reason to believe she was conscious; defendant pulled back the bedclothes on the victim's bed, pulled up her gown, pulled down her panties, and put his fingers into her pubic hair; the victim opened her eyes, and defendant immediately pushed his finger into her vagina; and when the victim moved slightly, defendant went immediately to the door, which he had closed after entering the room, and made his escape. The jury could reasonably find that defendant's actions in pulling back the bedclothing, pulling up the victim's gown, and pulling her panties aside amounted to actual physical "force" as that term is to be applied in sexual offense cases.

**Am Jur 2d, Rape §§ 4, 5, 7, 8, 63, 90.**

2. **Rape and Allied Offenses § 6 (NCI3d) — second degree sexual offense — threat of force — instructions**

The trial court's instructions on the element of force required for a second degree sexual offense did not permit the jury to convict if it found merely that the victim suffered from fear, fright or coercion but did not find that such fear, fright or coercion was induced by defendant's actions where the trial court expressly instructed that the jury could convict defendant on the theory of a threat of force sufficient to overcome the victim's will if the threat he made under all of the circumstances then existing would reasonably induce a fear of serious bodily harm in the mind of a person of ordinary firmness "and did in fact create such a fear in the mind of the victim."

**Am Jur 2d, Rape § 11.**

3. **Rape and Allied Offenses § 6 (NCI3d) — second degree sexual offense — threatened use of force — sufficient evidence of victim's fear**

The trial court's instruction permitting the jury to convict defendant of second degree sexual offense upon the theory of a threatened use of force was supported by evidence that defendant's actions in fact created a fear in the mind of the victim prior to his commission of the sexual offense where

STATE v. BROWN

[332 N.C. 262 (1992)]

the jury reasonably could find from the victim's testimony that the victim, as a result of defendant's presence in her hospital room and his actions toward her, was afraid that defendant would hurt her and "didn't know what to do," and that her fear caused her to do nothing and enabled defendant to push his finger into her vagina.

**Am Jur 2d, Rape § 11.**

4. **Criminal Law § 694 (NCI4th)— identification of defendant— refusal to give pattern instruction—harmless error**

Assuming *arguendo* that the trial court erred by refusing defendant's request to give the pattern jury instruction concerning identification of defendant as the perpetrator of the crime charged, defendant failed to show that this error was prejudicial where the victim's identification of defendant was absolutely unequivocal at all times, and the court's instructions made it clear to the jury that it must be satisfied beyond a reasonable doubt that *this defendant* committed the crime charged in order to return a verdict of guilty.

**Am Jur 2d, Appeal and Error §§ 776 et seq.; Trial § 1257.**

5. **Rape and Allied Offenses § 6.1 (NCI3d)— sexual offense— instruction on attempt not required**

The trial court in a prosecution for second degree sexual offense did not err by failing to instruct on the lesser included offense of attempted second degree sexual offense where all of the evidence tended to show that, if defendant committed any crime at all, he committed the crime for which he was tried.

**Am Jur 2d, Rape § 110; Trial §§ 1427 et seq.**

**Propriety of lesser-included-offense charge to jury in federal sex-crime prosecution. 100 ALR Fed 535.**

Justice FRYE concurring.

ON discretionary review of an unpublished decision of the Court of Appeals, 104 N.C. App. 309, 409 S.E.2d 332 (1991), reversing a judgment entered on 2 May 1990 by *Watts, J.*, in Superior Court, PITT County. Heard in the Supreme Court on 13 April 1992.

The defendant was tried at the 30 April 1990 Criminal Session of Superior Court, Pitt County, upon a proper bill of indictment

for second-degree sexual offense. The jury having returned a verdict finding the defendant guilty of second-degree sexual offense, the trial court entered judgment sentencing him to imprisonment for a term of thirty-five years. The defendant appealed to the Court of Appeals.

In an unpublished opinion, the Court of Appeals concluded that the State had not presented substantial evidence at trial to establish the element of force necessary to sustain a conviction under N.C.G.S. § 14-27.5(a)(1) for second-degree sexual offense. As a result, the Court of Appeals reversed the judgment of the trial court. On 21 October 1991, the Supreme Court allowed the State's motion for a temporary stay of the decision of the Court of Appeals. By Order dated 6 December 1991, the Supreme Court allowed supersedeas, granted the State's petition for discretionary review of the decision of the Court of Appeals, and granted the defendant's motion to bring additional issues forward for discretionary review.

*Lacy H. Thornburg, Attorney General, by Timothy D. Nifong, Assistant Attorney General, for the State-appellant.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Teresa A. McHugh, Assistant Appellate Defender, for the defendant-appellee Brown.*

MITCHELL, Justice.

On discretionary review before this Court, the State first argues that it met its burden of proof at trial as to all essential elements of the crime of second-degree sexual offense. The Court of Appeals concluded that no substantial evidence was introduced at trial to support a reasonable finding that the defendant in the present case used force in the commission of the offense charged. For that reason, the Court of Appeals concluded that the defendant was entitled to his liberty and reversed the trial court's judgment without reaching the defendant's remaining assignments of error. For reasons which follow, we conclude that the Court of Appeals erred in its conclusion and holding. Therefore, the decision of the Court of Appeals must be reversed, and the judgment of the trial court must be reinstated.

The evidence introduced at trial tended to show that the victim, an adult female, was employed as a registered nurse at Pitt County Memorial Hospital. She had long suffered from cystic fibrosis,

STATE v. BROWN

[332 N.C. 262 (1992)]

an hereditary pulmonary disease. She became seriously ill and was hospitalized as a patient at Pitt County Memorial Hospital on 20 December 1989. A course of treatment was commenced, including the intravenous administration of antibiotics. During 21 December 1989, the victim was coughing up blood and was nauseated. By the evening of 22 December 1989, she was feeling better and was able to watch television. About 11:30 p.m., she turned the television off and went to sleep. A nightlight was on in her room. The bathroom door was cracked open, and the light in the bathroom was left on.

At approximately 1:10 a.m., on 23 December 1989, the victim aroused from her sleep sufficiently to become aware that someone was feeling her identification bracelet and feeling the tubing being used to administer antibiotics to her intravenously. The victim assumed it was her nurse and did not open her eyes. The person then pulled down the bedclothing and began feeling the victim's abdomen. The victim assumed her nurse was assessing her condition by conducting abdominal palpitation, which is a routine procedure for assessing the condition of patients who have experienced nausea. The person then pulled up the victim's nightgown and pulled her panties aside. Immediately thereafter, the victim opened her eyes for the first time when the person placed his fingers in her pubic hair. The victim saw the defendant standing over her. The defendant then pushed his finger into the victim's vagina. When she moved, he began to walk away from the bed and toward the door. At that point the victim could tell that he was not dressed as a nurse. She sat up and said, "Sir, may I help you?" The defendant turned as he left the room and said, "No, ma'm, everything's okay, just go back to sleep."

When the man left her room, the victim turned off the solution of antibiotics which was being administered to her intravenously, picked up the pole on which the antibiotics were hanging, and went into the hall outside her room. She saw the defendant walking down the hall, and she called for someone to stop him. The victim told her nurse, Mrs. Horsely, what had happened and described her assailant. Nurse Horsely recognized that the description the victim gave of her assailant fit the man Horsely had seen in the hallway a few moments before. Nurse Horsely, with the assistance of a police officer, located the defendant in the front lobby of the hospital. Nurse Horsely recognized him as the man she had seen coming from the direction of the victim's room at about the

time the victim had been assaulted. Shortly thereafter, the victim identified the defendant as the man who had assaulted her in her hospital room.

Under N.C.G.S. § 14-27.5(a):

> A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person:
>
> (1) By force and against the will of the other person; or
>
> (2) Who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know that the other person is mentally defective, mentally incapacitated, or physically helpless.

N.C.G.S. § 14-27.5(a) (1986). We neither consider nor decide whether the evidence in this case would support a reasonable finding that the victim was "physically helpless" as that term is used in the statute, N.C.G.S. § 14-27.5(a)(2), since the charge against the defendant was not submitted to the jury on that theory. Instead, the charge against the defendant was submitted to the jury on the theory that the defendant engaged in a sexual act with the victim by force and against her will in violation of N.C.G.S. § 14-27.5(a)(1), and the jury returned its guilty verdict based on that theory. Our inquiry concerning this issue on appeal, then, is limited to the question of whether there was substantial evidence to support a reasonable finding that the defendant used the force required to sustain his conviction under N.C.G.S. § 14-27.5(a)(1).

The phrase "[b]y force and against the will of the other person" as used in N.C.G.S. § 14-27.5(a)(1) has the same meaning as it did at common law when it was used to describe an element of rape. *State v. Locklear*, 304 N.C. 534, 539, 284 S.E.2d 500, 503 (1981). That element is present if the defendant uses force sufficient to overcome any resistance the victim might make. *See, e.g., State v. Etheridge*, 319 N.C. 34, 46, 352 S.E.2d 673, 681 (1987) (quoting *State v. Alston*, 310 N.C. 399, 409, 312 S.E.2d 470, 476 (1984)); *State v. Jones*, 304 N.C. 323, 330, 283 S.E.2d 483, 487 (1981); *State v. Bailey*, 36 N.C. App. 728, 732, 245 S.E.2d 97, 100 (1978). "The requisite force may be established either by actual, physical force or by constructive force in the form of fear, fright, or coercion." *Etheridge*, 319 N.C. at 45, 352 S.E.2d at 680. Constructive force may be shown by evidence of threats or other actions of the defend-

ant which compel the victim's submission. *Id.* Such threats "need not be explicit so long as the totality of circumstances allows a reasonable inference that such compulsion was the unspoken purpose of the threat." *Id.* The defendant argues that no evidence of either actual physical force or constructive force was introduced at trial in the present case. In support of this argument, he relies strongly *inter alia* upon reasoning applied in *State v. Alston*, 310 N.C. 399, 312 S.E.2d 470 (1984). The defendant's reliance is misplaced.

*Alston* arose upon evidence so peculiar that the decision in that case may well be *sui generis*. The alleged victim in *Alston* had engaged in a consensual sexual relationship with the defendant for six months prior to the rape alleged in that case. Uncontroverted and uncontested testimony by the alleged victim herself showed that when they had sexual intercourse during that relationship, she would remain entirely motionless while the defendant undressed her and had intercourse with her. On the day of the alleged rape, the defendant waited outside the school which the woman attended. He grabbed her arm and told her she was going with him. As they walked away, he threatened to "fix" her face. The two then walked around the neighborhood and discussed their relationship. Eventually, the alleged victim followed the defendant to the home of a friend. There, as she testified was customary and usual conduct between them, the defendant began to undress her and told her to lie on the bed. Then, in accord with what she also described as usual and ordinary conduct between them, the defendant pushed her legs apart and had intercourse with her while she offered no resistance and remained motionless. She then left and went home. She waited some time but, after telling her mother what had happened, contacted law enforcement authorities who charged the defendant Alston with rape. Uncontested and uncontroverted testimony by the alleged victim in *Alston* also indicated that after the defendant had been charged with rape, he came by her apartment to see her.

Brown said she sat and looked at him, and he began kissing her. She pulled away and he picked her up and carried her to the bedroom. He performed oral sex on her and she testified that she did not try to fight him off because she found she enjoyed it. The two stayed together until morning and had sexual intercourse several times that night. Brown did not

disclose the incident to the police immediately because she said she was embarrassed.

*Alston*, 310 N.C. at 403, 312 S.E.2d at 473.

Based upon the unique uncontroverted facts of *Alston*, we concluded that the victim's testimony that she had acquiesced due to some "general fear" of the defendant due to his past tendencies for violence was not evidence that the defendant had used force or threats *to overcome the will of the victim to resist the particular sexual intercourse alleged to have been rape*; we also concluded that absent such evidence, the defendant's conviction could not stand. *Id.* at 409, 312 S.E.2d at 476. In more recent cases, we have clearly stated that the "general fear" reasoning of *Alston* should be applied only to situations like the peculiar factual situation presented in that case. *Etheridge*, 319 N.C. at 47, 352 S.E.2d at 681; *State v. Strickland*, 318 N.C. 653, 656, 351 S.E.2d 281, 283 (1987). This clearly is not such a case.

Based on substantial evidence introduced at trial, the jury could reasonably find that the defendant in the present case used actual physical force sufficient to overcome any resistance the particular victim he had chosen might have offered. In reaching our conclusion in this regard, we neither consider nor decide whether the actual physical force which will establish the force element of a sexual offense may be shown simply through evidence of the force inherent in the sexual act at issue. *But see State v. Raines*, 72 N.C. App. 300, 324 S.E.2d 279 (1985) (declining to adopt such a definition of "force" under N.C.G.S. § 14-27.5(a)(1)). We expressly defer any decision on that question until we are presented with a case which requires its resolution. Here, the evidence tended to show the defendant used actual physical force surpassing that inherent in the sexual act he committed upon the victim.

When reviewing the sufficiency of the evidence to support a defendant's conviction, as when reviewing a defendant's motion to dismiss for a lack of evidence, all evidence admitted, whether competent or incompetent, must be considered in the light most favorable to the State. *See generally State v. Scott*, 323 N.C. 350, 372 S.E.2d 572 (1988). The State is entitled to every reasonable inference. Evidence favorable to the State must be deemed to be true, and any inconsistencies or contradictions therein must be disregarded. *Id.* The question for the Court is whether there is substantial evidence of each essential element of the crime charged

STATE v. BROWN

[332 N.C. 262 (1992)]

and whether the defendant was the perpetrator of the crime. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

[1] The issue in dispute in this case is whether there was sufficient evidence of the element of force to support the defendant's conviction for second-degree sexual offense under N.C.G.S. § 14-27.5(a)(1). Taken in the light most favorable to the State, the evidence tended to show that the defendant and his victim were absolute strangers to each other. Nevertheless, the defendant entered the hospital in which the victim was a patient. With no lawful basis to do so, the defendant pushed open the door of the victim's hospital room in the middle of the night and entered unbidden into her darkened room. There he found the female victim suffering from cystic fibrosis and attached to the tubing through which she was being administered antibiotics intravenously. Her eyes were closed, and the defendant had no reason to believe she was conscious. Finding his victim in this condition, the defendant pulled back the bedclothes on the victim's bed, pulled up her gown, pulled down her panties, and put his fingers into her pubic hair. She opened her eyes, and he immediately pushed his finger into her vagina, thereby committing the sexual act necessary to establish a sexual offense. When his victim moved slightly, the defendant went immediately to the door of the darkened hospital room, which he had closed after entering the room, and made his escape. Such conduct by a defendant *might* not amount to force sufficient to overcome any resistance of the victim or the will of the victim to resist if, as in *Alston*, the defendant's actions were directed toward a woman who, over a long period of time before and after the alleged criminal act, voluntarily permitted the defendant to regularly engage in identical conduct. *But see generally* Susan Estrich, *Rape*, 95 Yale L.J. 1087 (1986) (a thoughtful article, described by the author as "a study of rape law as an illustration of sexism in the criminal law," which makes strong arguments to the effect that the law *should* treat such conduct as "force" even on those facts or *should* abandon the element of force). Here, however, where the evidence was that the defendant entered a hospital in the middle of the night and went into the room of a patient whom he had never seen before, a jury could reasonably find that his actions in pulling back the bedclothing, pulling up the victim's gown, and pulling her panties aside amounted to actual physical "force" as that term is to be applied in sexual offense cases.

STATE v. BROWN

[332 N.C. 262 (1992)]

Pursuant to our order allowing the defendant's motion to bring forward additional issues, the defendant has briefed and argued other issues before this Court. We turn now to an examination of those issues.

[2] The defendant argues that the trial court erroneously instructed the jury on the element of force required for second-degree sexual offense under N.C.G.S. § 14-27.5(a)(1). Specifically, the defendant complains that the trial court erred in instructing the jury as follows:

Secondly, the State must prove that the defendant used or threatened to use force sufficient to overcome any resistance the victim might make. Force or threat of force may be either actual or constructive. Thus, the force necessary to satisfy this element need not be actual physical force; it can be constructive force. Fear, fright or coercion may take the place of actual force. A threat which under all of the circumstances then existing would reasonably induce a fear of serious bodily harm in the mind of a person of ordinary firmness and did in fact create such a fear in the mind of the victim would constitute the requisite constructive force required by law.

The defendant objected to this part of the trial court's instructions. He argues such instructions could have led the jury to convict if the jury merely found that the victim suffered from fear, fright or coercion, but did not find that such fear, fright or coercion was induced by the defendant's actions. The trial court expressly instructed, however, that the jury could convict the defendant on the theory of a threat of force sufficient to overcome the victim's will, if the threat he made "under all of the circumstances then existing would reasonably induce a fear of serious bodily harm in the mind of a person of ordinary firmness *and did in fact create such a fear in the mind of the victim*." (Emphasis added.) This argument is without merit.

[3] The defendant also argues that an instruction permitting the jury to convict the defendant upon the theory of a threatened use of force was error in the present case because it was unsupported by any evidence that the defendant's actions in fact created a fear in the mind of the victim prior to the defendant committing the sexual offense. Again, we do not agree.

Substantial evidence in the present case tended to show that the victim opened her eyes and saw the defendant after he had

placed his hand on her pubic hair, but before he had actually penetrated her vagina with his finger. In this regard, the victim testified as follows:

> Q. Now, from the time you opened your eyes *until this ultimate act occurred,* how many — how long would you say that took?
>
> A. A matter of seconds. It seemed like hours.
>
> Q. What were you thinking as you were lying there?
>
> A. I was in shock. I didn't know what to do. *I was afraid* that he was going to hurt me or continue what he had started. *I didn't know what to do.*
>
> Q. What happened then?
>
> A. I moved my leg. I was still lying down. He walked away from the bed, started towards the door.
>
> Q. What was your emotional state at that time?
>
> A. I was in shock.
>
> Q. Were you frightened?
>
> [A.] Very much so.
>
> Q. What were you frightened about?
>
> A. I didn't know who it was, why they were there or what they were going to do next. I didn't know if he would try to kill me.

(Emphasis added.) From this testimony, the jury reasonably could have found that the victim, as a result of the defendant's presence in her room and his actions toward her, was afraid that the defendant would hurt her, and "didn't know what to do." Her fear caused her to do nothing and enabled the defendant to push his finger into her vagina. Further, a jury reasonably could have concluded that, under the circumstances, the defendant's presence and actions amounted to a threat of force sufficient to overcome any resistance of the victim.

[4] The defendant next argues that the trial court erred by declining the defendant's request to give the pattern jury instruction concerning identification of the defendant as the perpetrator of

the crime charged. As any error here is not alleged to have arisen under the Constitution of the United States, the burden is on the defendant to show that, had the error not been committed, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1988). Assuming *arguendo* that the trial court erred in failing to give the instruction requested, we conclude that the defendant has failed to show that the error was prejudicial.

In the present case, the victim's identification of the defendant as the perpetrator of the crime charged was absolutely unequivocal at all times from the point of his apprehension moments after the crime was committed through the trial of this case. Nurse Horsely's identification of him as the man in the hall at about the time of the crime (approximately 1:10 a.m.) was also unequivocal.

Further, the instructions given by the trial court made it clear to the jury that before the jury could convict, the jury must be satisfied beyond a reasonable doubt that *this defendant* committed the crime charged. As the trial court defined each element of the crime, it expressly stated that the jury must find that "the defendant" had engaged in conduct sufficient to establish that element. The trial court then further instructed the jury:

> So I charge you that if you find from the evidence and beyond a reasonable doubt that on or about . . . December 22, 1989, *the defendant John Brown* engaged in a sexual act with the victim . . . , and that *he* did so [by means that established the elements of the crime charged] . . . , it will be your duty to return a verdict of guilty of second-degree sexual offense as charged.

(Emphasis added.) In light of the victim's unequivocal identification of the defendant and the instructions given by the trial court in the present case, we are convinced that the jury had a clear understanding that it must be satisfied beyond a reasonable doubt that *this defendant* committed the crime charged in order to return a verdict of guilty. *See State v. Shaw*, 322 N.C. 797, 804-05, 370 S.E.2d 546, 550-51 (1988). Therefore, the defendant has failed to carry his burden of showing prejudice.

[5] Finally, the defendant argues that the trial court erred by failing to instruct the jury on the lesser included offense of attempted second-degree sexual offense and by failing to have the jury consider returning a verdict finding him guilty of that lesser in-

cluded offense. Having reviewed the evidence introduced at trial, we are convinced that all of the evidence tended to show that, if the defendant committed any crime at all, he committed the crime of second-degree sexual offense for which he was tried. In such situations, the trial court must refuse to charge on lesser included offenses. *E.g., State v. Bagley,* 321 N.C. 201, 210, 362 S.E.2d 244, 249-50 (1987), *cert. denied,* 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

For the foregoing reasons, we conclude that the State introduced substantial evidence of the defendant's use of force—both actual and constructive—and that the defendant's trial was otherwise free of prejudicial error. Accordingly, we reverse the unpublished decision of the Court of Appeals and remand this case to the Court of Appeals for its further remand to the Superior Court, Pitt County, for reinstatement of the judgment of the trial court.

Reversed and remanded.

Justice FRYE concurring.

I concur in the opinion of the majority, but write separately because this case presents an excellent opportunity for this Court to say explicitly what I believe is already implicit in our law: the elements of force and lack of consent in rape and sexual offense cases may be satisfied when the victim demonstrates, as in this case, that the attack was carried out by surprise.[1]

The phrase, "by force and against the will of another person," found in our state's rape and sexual offense statutes "means the same as it did at common law when it was used to describe some of the elements of rape." *State v. Locklear,* 304 N.C. 534, 539, 284 S.E.2d 500, 503 (1981); *see* N.C.G.S. §§ 14-27.2 to -27.5 (1988). At common law, the elements of force and lack of consent for the crime of rape were implied in law "upon the mere showing of sexual intercourse with a person who is asleep, unconscious, or otherwise incapacitated and therefore could not resist or give

---

1. I realize that this defendant's conviction cannot be upheld on a "surprise" theory because this theory was not submitted to the jury. However, given the importance of this issue and the fact that this theory was briefed and argued by both parties, I believe it to be a proper subject for our consideration.

**STATE v. BROWN**

[332 N.C. 262 (1992)]

consent. . . . In such a case sexual intercourse with the victim is *ipso facto* rape because the force and lack of consent are implied in law." *State v. Moorman*, 320 N.C. 387, 392, 358 S.E.2d 502, 505-06 (1987); *see State v. Dillard*, 90 N.C. App. 318, 322, 368 S.E.2d 442, 445 (1988) (force and lack of consent implied in law when sexual offense perpetrated upon a victim who is sleeping or similarly incapacitated).

The teaching of the common law rule is clear: force and lack of consent may be implied when the circumstances surrounding the attack are such that the victim cannot resist or give consent. A surprise attack, as in this case, certainly fits within this common-sense rule. The circumstances surrounding the attack in this case, for example, were such that the victim could not resist or give consent. By the time she realized what was happening, the sexual offense was complete. Allowing an attacker to escape justice where the attack is carried out by surprise, although without actual force, not only would be morally indefensible, but would also fly in the face of the well-settled common law rule of implied force.

The "surprise theory" of implied force is certainly not new. More than six decades ago, the Supreme Court of Missouri held that the force element of that state's rape statute was satisfied by a surprise attack of a physician against a female patient. *State v. Atkins*, 292 S.W. 422 (Mo. 1926). In *Atkins*, the victim visited the physician to replace the bifocal lenses in her eyeglasses. *Id.* at 423. During an examination to determine the cause of her eye trouble, the defendant put the victim's heels in the stirrups of a chair, drew her legs apart, pressed against her stomach and sides, and removed her bloomers. *Id.* Embarrassed, the victim closed her eyes and covered them with her arms; the defendant then "began to press against her sides, and then the prosecutrix felt something press against her private parts." *Id.* The defendant argued that he could not be convicted of rape because the "alleged act of ravishing was not forcible." *Id.* at 425. The court disagreed.

> If it is rape under our statutes for a man to have illicit sexual connection with a woman while she is asleep, and incapable of consenting, when no more force is used than is necessary to effect penetration with the consent of the woman, we are unable to see why it is not also rape for a man to have improper sexual connection with a woman by accomplishing penetration through surprise, when she is awake, but utterly

unaware of his intention in that regard. In such case the woman is incapable of consenting, because she has no opportunity to give consent any more than has a sleeping woman.

*Id.* at 426; *see also People v. Borak*, 13 Ill. App. 3rd 815, 821, 301 N.E.2d 1, 5 (1973) (force implied when "rape or deviate sexual acts proscribed by statute are accomplished under the pretext of medical treatment when the victim is surprised, and unaware of the intention involved"); 75 C.J.S. *Rape* § 16 (1952) ("[B]oth at common law and under statutory provisions, if [the victim] is deceived by fraud or surprise as to the act perpetrated on her, it is rape, although she makes no resistance.").

In sum, I believe it is already implicit in our law that the force and lack of consent elements of rape and sexual offense can be satisfied when the attack, as here, is carried out by surprise. I believe it is time to say so explicitly.