NO. COA13-1228

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

    v.

KEVIN MCDONALD HENDERSON

Wake County
No. 12 CRS 201449

Appeal by Defendant from Judgment entered 28 February 2013 by Judge Michael J. O'Foghludha in Wake County Superior Court. Heard in the Court of Appeals 19 March 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Daphne D. Edwards, for the State.*
>
> *Jon W. Myers for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

Defendant Kevin McDonald Henderson was charged with second degree sexual offense on 19 January 2012. The trial began on 20 February 2013 and concluded the following day. The evidence at trial tended to show the following:

Sandra[1] was walking through a Target store in Raleigh on 17 September 2011 with her young child. She was wearing a knee-length denim skirt with a slit in the back. While perusing the candle section, Sandra noticed a man, who was later determined to be Defendant, standing nearby. Sandra moved on to the cosmetics area and gave her child permission to explore the candy section, which was located "a few aisles down."

Sandra began looking at makeup. Another woman was standing about two feet away. As Sandra bent down to pick something off the bottom shelf, she felt fingers "coming up between the slit in my skirt, parting between my buttocks, and touching in between my vaginal lips."

> And I was, like — [the] first thing I thought was, like, my brain was trying to process something. And I don't know if anyone's ever had the experience of being in a grocery store aisle and, like, a three-year-old kid reaches up your skirt, but they don't mean it, you know, when a little kid does it. So the first thing my brain is trying to process is what was happening, was there a kid? And, like, my brain is, "Okay. No kid is going to do that." It was almost

---

[1] Defendant notes in his brief that, while N.C.R. App. P. 3.1(b) does not apply to adults, it is the policy of the North Carolina Indigent Defense Services "[to shield] the identities of victims of sexual crimes in appellate filings" regardless of age. We commend the policy of Indigent Defense Services and use a pseudonym for that purpose here. We recommend that the State also observe such a policy.

> that feeling of, like, you know, something inappropriate. And I guess my brain was just grasping for it being a kid or something.

At that point, Sandra turned around and saw Defendant. "He was very close to me. His face was there. I saw him. He looked at me, and he ran. He ran right away." As Defendant left, Sandra heard the other woman say, "What did he do to you? What did he do to you?"

Sandra reported the incident to Target, and the police were called. In the meantime, Sandra met with a Target employee and explained the situation. According to the employee, Sandra was "very startled, shaken, not to the point she was in tears, but she was very upset. You could tell she was angry."

Testifying in his own defense, Defendant admitted "plac[ing his] right hand . . . on the top of [Sandra's] backside, her butt — buttocks . . . two inches above the split [in her skirt]." According to Defendant, he noticed her skirt "and was enticed by looking at that." When he saw her bend over to get something from a lower shelf, Defendant "wanted to touch her . . . backside because . . . the skirt was form fitting." Hoping to make it appear as if he accidentally brushed her, Defendant touched Sandra on the buttocks. When Sandra stood up, Defendant realized he had gone too far and left.

Defendant moved to dismiss the charges against him at the close of the State's evidence. That motion was denied, and Defendant renewed his motion to dismiss at the close of all the evidence. The motion was again denied, and Defendant was found guilty by unanimous jury verdict on 21 February 2013. One week later, on 28 February 2013, the trial court sentenced Defendant to 69 to 92 months in prison with credit for 264 days served. Defendant appeals.

## *Standard of Review*

> Upon [the] defendant's motion for dismissal, the question for the [appellate c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.

*State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation and internal quotation marks omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

## *Discussion*

On appeal, Defendant contends that the trial court erred in denying his motion to dismiss because the evidence is insufficient to show that he acted "by force and against the will of [Sandra]," a necessary element of second-degree sexual

offense. Specifically, Defendant argues that the touching occurred by surprise and, thus, did not "afford[ Sandra] the opportunity to consent" or resist. This argument is entirely without merit.

Under section 14-27.5 of the North Carolina General Statutes, a person may be found guilty of a sexual offense in the second degree if that person engages in a sexual act with another person "[b]y force and against the will of the other person[.]" N.C. Gen. Stat. § 14-27.5 (2013).

> The statutory requirement that the act be committed by force and against the will of the victim may be established by either actual, physical force, or by constructive force in the form of fear, fright, or coercion. . . . "Physical force" means force applied to the body.

*In re Clapp*, 137 N.C. App. 14, 24, 526 S.E.2d 689, 696–97 (2000) (citations and certain internal quotation marks omitted). The actual force element "is present if the defendant uses force sufficient to overcome *any* resistance the victim *might* make." *State v. Brown*, 332 N.C. 262, 267, 420 S.E.2d 147, 150 (1992) (citations omitted; emphasis added).

With regard to the offense of rape, our courts have historically

> implied in law the elements of force and lack of consent so as to make the crime of

> rape complete upon the mere showing of sexual intercourse with a person who is asleep and therefore could not resist or give consent. The phrase "by force and against the will" used in the first and second-degree rape statutes and the first and second-degree sexual offense statutes means the same as it did at common law when it was used to describe some of the elements of rape. *It makes no difference* in the case of a sleeping *or similarly incapacitated* victim whether the State proceeds on the theory of a sexual act committed by force and against the victim's will or whether it alleges an incapacitated victim; *force and lack of consent are implied in law*.

*State v. Dillard*, 90 N.C. App. 318, 322, 368 S.E.2d 442, 445 (1988) (citations, certain internal quotation marks, certain brackets, and ellipsis omitted; emphasis added).

Here, as discussed above, Defendant argues that the State failed to present sufficient evidence that he acted by force and against Sandra's will because she did not have time to decide whether to consent or object to the touching.[2] Thus, Defendant

---

[2] Defendant's argument appears to be rooted in a misreading of the *Brown* case, cited above. In that case, Justice Frye wrote a concurring opinion expressing his wish that the Court had taken more time to "say explicitly what I believe is already implicit in our law: the elements of force and lack of consent in rape and sexual offense cases may be satisfied when the [State] demonstrates, as in this case, that the attack was carried out by surprise." *Brown*, 332 N.C. at 274, 420 S.E.2d at 154 (Frye, J., concurring). Defendant's brief indicates that he erroneously believes Justice Frye was *dissenting* and not concurring in that opinion. As a result, Defendant inaccurately argues that the

suggests that individuals may lawfully commit acts similar to the one committed here as long as they do so by surprise. This argument borders on the absurd. As quoted above, we have already stated that an individual may be guilty of second-degree sexual offense when the victim is *sleeping* or *similarly incapacitated*. *Id.*

The touching in this case was clearly against Sandra's will. To the extent that Sandra was not aware of the touching before it occurred or did not understand the exact nature of the touching at the moment it occurred, lack of consent is implied in law. *See, e.g.*, *Brown*, 332 N.C. at 274, 420 S.E.2d at 154 (holding that the State introduced substantial evidence of the defendant's use of force, even though the victim initially believed the assailant was a nurse, when the defendant entered the victim's hospital room, pulled away her bed clothing and gown, pushed her panties aside, and touched her vagina). Whether Sandra was "surprised" by Defendant's actions has no bearing on the applicability of the second-degree sexual offense statute. Defendant's argument is overruled.

NO ERROR.

---

trial court incorrectly "followed Justice Frye's dissent in *Brown* and applied the law as he wanted it to be." In fact, the trial court applied the law as it is.

Judges GEER and ERVIN concur.