STATE OF NORTH CAROLINA v. JOSEPH EDWARD TUCKER

No. COA01-1480

(Filed 17 December 2002)

**1. Sexual Offenses— second-degree—evidence of force**

There was sufficient evidence in a prosecution for second-degree sexual offense to allow a jury to determine that a juvenile in a training school was forced to engage in a sexual act by force and against his will where the victim was thrown on his bed face down, held during the assault, and told that he would be beaten if he did not remain silent; he reported the incident immediately following the transfer of his assailants to another unit; and a subsequent physical exam showed corroborating trauma.

**2. Sentencing— prior record level—juvenile adjudication**

A defendant being sentenced for second-degree sexual offense should not have been assigned a sentencing point because he was in training school at the time of the offense. Juveniles in North Carolina are neither convicted, sentenced, nor imprisoned; adjudication of delinquency and commitment to a youth development center shall not be considered conviction of a criminal offense.

Appeal by defendant from judgment entered 13 July 2001 by Judge Anthony M. Brannon in Lenoir County Superior Court. Heard in the Court of Appeals 11 September 2002.

*Roy Cooper, Attorney General, by William W. Stewart, Jr., Assistant Attorney General, for the State.*

*Richard E. Jester for defendant-appellant.*

THOMAS, Judge.

Defendant, Joseph Edward Tucker, argues two assignments of error in his appeal. First, he contends there is insufficient evidence that he committed a second-degree sexual offense. Second, he argues the trial court erred in calculating his prior record level by equating his stay at a juvenile training school, now known as a youth development center, with a "sentence of imprisonment."

For the reasons herein, we find no error in the second-degree sexual offense conviction but reverse and remand for sentencing pur-

poses. We note that defendant abandoned the part of his appeal challenging convictions of crime against nature and attempted crime against nature.

Defendant, fifteen years old at the time of these offenses, was initially under the jurisdiction of the juvenile court. Jurisdiction was transferred to the superior court under N.C. Gen. Stat. § 7B-2200 following findings of probable cause and a transfer hearing.

The State's evidence at trial in superior court tends to show the following: On the night of 12 July 2000, "Juvenile A" was accosted by defendant and another juvenile in Juvenile A's room at Dobbs Training School in Kinston, North Carolina. All three juveniles had earlier been committed to the Department of Juvenile Justice and Delinquency Prevention upon findings of delinquency and sent to Dobbs. Defendant and the other juvenile threw Juvenile A on his bed and instructed him to remain silent. The other juvenile then held Juvenile A down while defendant "stuck his penis in [his] butt." Juvenile A did not immediately report the incident but instead waited until defendant and the other juvenile were transferred to the "Segregation Unit" three days later for an alleged assault on another juvenile. The Segregation Unit is a section of the Training School where those who commit major infractions are isolated in individual cells. A subsequent physical examination of Juvenile A revealed trauma to his rectal area, including penetration, bruising, lacerations and abrasions, all of which were probably sustained three days prior to the examination.

On 26 August 2000, "Juvenile B" was in his cell in the Segregation Unit at Dobbs. Defendant entered Juvenile B's cell, which had been unlocked for cleaning, and began helping him clean. Defendant left, returned with some grease in his hand, and instructed Juvenile B to "bend over [and pull [his] jumpsuit down." Defendant then proceeded to have anal intercourse with Juvenile B, although he told defendant that it "hurt and to stop." Defendant eventually left the cell, but returned a few minutes later and again instructed Juvenile B to "bend over and pull [his] jumpsuit down." When defendant pulled down his own jumpsuit, however, Darnetta Kittrell, a staff member at Dobbs, entered the cell and confronted defendant and Juvenile B. Kittrell reported that Juvenile B was frightened, crying, and trembling when she discussed the incident with him in a nearby office.

Juvenile B testified that he complied with defendant's instructions because he was afraid of being beaten up by a group of juveniles

at Dobbs who were referred to as the "Raleigh boys." Not only had defendant threatened Juvenile B the previous night with the use of the Raleigh boys, but Juvenile B had earlier been "jumped" by defendant and two other boys in January 2000.

Defendant's evidence, meanwhile, tends to show the following: No staff member at Dobbs saw defendant leaving or entering any of the rooms during the night of 12 July 2000. On 26 August 2000, William Harrison, the Segregation Unit supervisor, unlocked the cell doors of both Juvenile B and defendant in order for them to clean their cells. He noted that the boys were chatting as they worked and Juvenile B did not seem afraid of defendant. Harrison said he did not hear or see any unusual behavior before being summoned by Kittrell to Juvenile B's cell.

At the close of all the evidence, defendant moved to dismiss the charges based on insufficiency of the evidence. The trial court denied the motion.

The jury returned guilty verdicts of second-degree sexual offense and crime against nature involving Juvenile A and attempted crime against nature as to Juvenile B. Finding that the offenses were committed while defendant was serving a sentence of imprisonment, the trial court determined defendant to have a prior record classification of Level II under N.C. Gen. Stat. § 15A-1340.14. Defendant was sentenced to a minimum of 100 and a maximum of 129 months for second-degree sexual offense, a concurrent sentence of six to eight months for crime against nature and a consecutive sentence of seventy-five days for attempted crime against nature.

[1] By his first assignment of error, defendant contends the trial court erred in denying his motion to dismiss because there was insufficient evidence he committed second-degree sexual offense. The elements of second-degree sexual offense are: (1) a person engages in a sexual act; (2) with another person; and (3) the act is by force and against the person's will. See N.C. Gen. Stat. § 14-27.5(a) (2001). Defendant does not contest that ample evidence was presented of a sexual act between defendant and Juvenile A. However, defendant argues, the State failed to present sufficient evidence to demonstrate the act was against Juvenile A's will. Specifically, defendant asserts the testimony of security personnel at Dobbs did not corroborate Juvenile A's accusations of force or lack of consent, Juvenile A did not cry during the alleged assault, and Juvenile A did not immediately report the assaults.

In reviewing a motion to dismiss, the court must determine whether there is both substantial evidence of each element of the offense charged and substantial evidence that the defendant is the perpetrator. *State v. Stroud*, 345 N.C. 106, 111, 478 S.E.2d 476, 479 (1996), *cert. denied*, 522 U.S. 826, 139 L. Ed. 2d 43 (1997). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). The evidence must be considered in the light most favorable to the State, drawing all reasonable inferences in the State's favor whether the evidence is direct, circumstantial, or both. *State v. Israel*, 353 N.C. 211, 539 S.E.2d 633 (2000).

Actual physical force is not required under North Carolina's sexual offense statute to satisfy the requirement of the sexual act being committed "by force and against the will" of the victim. *State v. Locklear*, 304 N.C. 534, 540, 284 S.E.2d 500, 503 (1981). "Fear of serious bodily harm reasonably engendered by threats or other actions of a defendant and which causes the victim to consent to the sexual act takes the place of force and negates the consent." *Id.*

In *Locklear*, the victim, a seventeen-year-old, had been arrested and placed in a cell with three other young offenders who threatened and assaulted him until he agreed to perform fellatio on all of them. *Id.* at 540, 284 S.E.2d at 503-04. The victim did not report the incidents until he was removed from jail two days later for a court appearance despite wardens being available during the interim. *Id.* Nonetheless, our Supreme Court held that since the victim was placed in a cell with strangers from which he could not escape, and was threatened with harm to his life, there was sufficient evidence to satisfy the element of "by force and against the will" of the victim. *Id.* at 540-41, 284 S.E.2d at 504.

Here, Juvenile A presented evidence of being thrown onto his bed, face down, by defendant and the other juvenile, and being held during the assault. He was told that if he did not remain silent they would "beat [him] down." Juvenile A immediately reported the incident after his assailants were transferred to another unit, then feeling safe enough to do so. A subsequent physical examination showed Juvenile A suffered trauma to his rectum, including penetration, lacerations, bruising, and abrasions.

This evidence of actual force, substantiated by physical evidence, and evidence of the threat of greater physical violence, were sufficient to allow a jury to determine whether Juvenile A was forced to

engage in a sexual act by force and against his will. Defendant's assignment of error therefore lacks merit.

**[2]** By his second assignment of error, defendant contends the trial court erred by assigning a sentencing point because defendant was in training school at the time of the offense. He argues that he was not serving a sentence of imprisonment so as to make N.C. Gen. Stat. § 15A-1340.14(b)(7) applicable. We agree.

Under the Structured Sentencing Act, N.C. Gen. Stat. §§ 15A-1340.10 to 1340.23, the trial court must determine a defendant's prior record level by assigning points for previous convictions before imposing a sentence. N.C. Gen. Stat. § 15A-1340.14 (2001). An offender with one to four points is classified as Level II for sentencing purposes, whereas an offender with no points is classified as Level I. N.C. Gen. Stat. § 15A-1340.14(c) (2001). One point is assigned:

> If the offense was committed while the offender was on supervised or unsupervised probation, parole, or post-release supervision, or while the offender was serving a sentence of imprisonment, or while the offender was on escape from a correctional institution while serving a sentence of imprisonment[.]

N.C. Gen. Stat. § 15A-1340.14(b)(7) (2001).

The Act "applies to criminal cases in North Carolina." N.C. Gen. Stat. § 15A-1340.10 (2001). Under our Juvenile Code, "[a]n adjudication that a juvenile is delinquent or commitment of a juvenile to the Department for placement in a youth development center *shall neither be considered conviction of any criminal offense* nor cause the juvenile to forfeit any citizenship rights." N.C. Gen. Stat. § 7B-2412 (2001) (emphasis added).

Further, the juvenile justice system is permitted to lack the full array of constitutional guarantees because it does not contain clearly criminal or civil proceedings, and provides for the possibility of an "intimate, informal protective proceeding." *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 29 L. Ed. 2d 647, HR7 (1971). For example, there is no right to bond in North Carolina's juvenile system, and no right to a jury trial. *See In re Whichard*, 8 N.C. App. 154, 174 S.E.2d 281 (1970), *cert. denied*, 403 U.S. 940, 29 L. Ed. 2d 719 (1971). The juvenile system is designed to protect both the welfare of the delinquent child as well as the best interest of the State. *Matter of Hardy*, 39 N.C. App. 610, 614, 251 S.E.2d 643, 646 (1979). As a result,

the objectives of confinement under the Juvenile Code significantly differ from those for imprisonment under our criminal statutes.

> The primary purposes of criminal sentencing are to "impose a punishment commensurate with the injury the offense has caused . . .; to protect the public by restraining offenders; to assist the offender toward rehabilitation . . .; and to provide a general deterrent to criminal behavior." N.C. Gen. Stat. § 15A-1340.12 (1994). A juvenile disposition on the other hand, has as its primary purpose "to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction." N.C. Gen. Stat. § 7A-646 (1995)

*Matter of Carter*, 125 N.C. App. 140, 141, 479 S.E.2d 284, 285 (1997). The Juvenile Code was modified effective 1 July 1999 with the following purposes and policies:

> (1) To protect the public from acts of delinquency.

> (2) To deter delinquency and crime, including patterns of repeat offending:

> a. By providing swift, effective dispositions that emphasize the juvenile offender's accountability for the juvenile's actions; and

> b. By providing appropriate rehabilitative services to juveniles and their families.

> (3) To provide an effective system of intake services for the screening and evaluation of complaints and, in appropriate cases, where court intervention is not necessary to ensure public safety, to refer juveniles to community-based resources.

> (4) To provide uniform procedures that assure fairness and equity; that protect the constitutional rights of juveniles, parents, and victims; and that encourage the court and others involved with juvenile offenders to proceed with all possible speed in making and implementing determinations required by this Subchapter.

N.C. Gen. Stat. § 7B-1500 (2001). Additionally, dispositions have the following purpose:

> The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve

STATE v. TUCKER

[154 N.C. App. 653 (2002)]

the objectives of the State in exercising jurisdiction, including the protection of the public. The court should develop a disposition in each case that:

(1) Promotes public safety;

(2) Emphasizes accountability and responsibility of both the parent, guardian, or custodian and the juvenile for the juvenile's conduct; and

(3) Provides the appropriate consequences, treatment, training, and rehabilitation to assist the juvenile toward becoming a nonoffending, responsible, and productive member of the community.

N.C. Gen. Stat. § 7B-2500 (2001). While protection of the public has received new emphasis, and accountability has become an integral part of rehabilitation, the Juvenile Code remains far from a punitive system.

Accordingly, the State's argument that the plain language of section 15A-1340.14(b)(7), stating that an "offense . . . committed . . . while the offender was serving a sentence of imprisonment" clearly applies in all instances when an offender is detained against his will or restrained in some manner is too broad and, in the juvenile context, inapposite. A juvenile in North Carolina is not convicted in Juvenile Court of anything. Likewise, a juvenile is not sentenced by the Juvenile Court and there is no sentence of imprisonment. A juvenile may be adjudicated delinquent by the Juvenile Court and, where appropriate, committed to the Department of Juvenile Justice and Delinquency Prevention for placement in a youth development center. *See* N.C. Gen. Stat. § 7B-2506(24) (2001). There is a fundamental legal difference between these wording choices unrelated to mere delicacy of diction.

Therefore, while we find no error in defendant's conviction of second-degree sexual offense, we reverse that part of the order placing defendant in a Level II classification and remand for sentencing consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Judges WALKER and McGEE concur.