STATE OF NORTH CAROLINA v. ANTHONY DWAYNE JONES

No. 31

(Filed 3 November 1981)

1. Searches and Seizures § 12— temporary detention—reasonable suspicion of criminal activity—seizure within the ambit of Fourth Amendment

The totality of circumstances afforded an officer reasonable grounds to believe criminal activity was afoot, and he therefore did not violate defendant's constitutional right by temporarily detaining defendant as a suspect where (1) the officer observed an occupied vehicle parked in the travel lane of a public road at 11:45 p.m. with its lights off and motor running, (2) the officer noticed defendant running from a closed business toward the car, and (3) defendant opened the car door and placed something on the back seat.

2. Searches and Seizures § 33— shotgun in "plain view"—seizure proper

Since an officer had the authority to detain defendant temporarily, he violated no constitutional right in seizing a sawed-off shotgun, which constituted contraband under G.S. 14-288.8(c)(3), which protruded from a brown paper bag in the back seat of a vehicle and was in plain view from a vantage point the officer had legally obtained.

**3. Rape § 6.1— failure to instruct on second degree rape proper**

The trial court was not required to submit second degree rape and second degree sexual offense, even though defendant's witness testified he had defendant's shotgun while defendant was with the victim, as there was no evidence defendant used any force other than the shotgun and if the jury found defendant did not have the shotgun, it would have to find him not guilty on grounds the victim consented. G.S. 14-27.2(a)(1)a, G.S. 14-27.3(a)(1), G.S. 14-27.4(a)(1)a, and G.S. 14-27.5(a)(1).

**4. Criminal Law § 26.5; Kidnapping § 1— rape and kidnapping—no double jeopardy**

There is no violation of the double jeopardy clause in considering rape as part of the crime of kidnapping and as a crime in itself.

DEFENDANT appeals from judgments of *Hobgood (Robert H.)*, *J.*, 1 December 1980 Criminal Session, CUMBERLAND Superior Court.

Defendant was charged in a three-count bill of indictment with committing the following offenses on 31 May 1980 in Cumberland County: (1) the first degree rape of Ava G. Whittaker in violation of G.S. 14-27.2, (2) a first degree sexual offense with Ava G. Whittaker, to wit, oral sex, in violation of G.S. 14-27.4, and (3) the kidnapping of Ava G. Whittaker by unlawfully removing her from one place to antoher for the purpose of facilitating the commission of the felony of rape, she being sixteen years of age or older, and being sexually assaulted during the kidnapping in violation of G.S. 14-39.

The State's evidence tends to show that Ava Whittaker was a member of the United States Army stationed at Fort Bragg and living in the home of Mr. and Mrs. Freddie Terry. On Saturday, 31 May 1980, she returned from a visit with friends, arrived at the Terry residence about 10:45 p.m., entered and locked the door. All the windows were open since it was a hot night. She started closing them and heard a noise coming from a small bedroom in which the young son of the Terrys usually slept. The Terrys were not at home at the time. Becoming apprehensive, she picked up her car keys, left the house and locked herself in her car parked nearby. In five to ten minutes a man tapped on the car window, displayed a sawed-off shotgun with two barrels and demanded that she open the door, which she did out of fright. The man entered her car, forced her to perform fellatio upon him, then raped her in the car and thereafter forced her to accompany

him on foot into a nearby field where he forced her to undress and raped her again. She testified the man had the gun with him at all times. He finally released her and she telephoned for help from a nearby trailer.

At approximately 11:45 p.m. that same night, Sergeant J. W. Welch, patrol commander for the Spring Lake Police Department, observed an unoccupied Toyota hatchback stopped in the westbound lane of travel on Odell Road near Highway 87 with its lights off and the motor running. Sergeant Welch passed the vehicle and was attempting to make a U-turn to the left to come up behind it when he saw an individual in the parking lot of a nearby Quick-Stop walking at a fast pace toward the Toyota carrying a brown paper bag in his hand. Officer Welch used his public address set on the patrol car and advised the individual that he wanted to talk to him. The man quickened his pace, moved to the driver's side of the Toyota, opened the door, folded the driver's seat forward and moved the upper part of his body into the back seat area of the car. Officer Welch exited his patrol car, approached the Toyota and ordered the man to step back from the vehicle with his hands in plain view. When the man came backing out of the vehicle with his hands in plain sight, he did not have the paper bag. The officer shined his flashlight inside the Toyota and observed that the back seat had been pulled forward and the brown paper bag had been shoved down between the seat and the back portion. Sticking out of the paper bag and out of the seat, in plain view, was the butt of a sawed-off shotgun or some similar type weapon. Officer Welch retrieved the item and determined that it was a double-barreled sawed-off shotgun. The person involved was the defendant Anthony D. Jones.

The officer placed defendant under arrest for possession of a weapon of mass destruction. After frisking defendant, Officer Welch asked for his registration card to the Toyota in order to fill out the storage report and was advised by defendant that it was in the glove box of the vehicle and that he would have to get it from there. While doing so, Officer Welch noted in the front seat one twelve-gauge Federal shotgun shell.

After taking defendant to the police station in the patrol car, Officer Welch returned to a house on Highway 87 directly beside the Quick-Stop and talked to numerous people there, including

Ava Whittaker. She told the officer that she had been raped and that it had just occurred. She described her assailant as a black male, approximately 5 feet 9 inches tall, weighing 165 pounds. She said he had a sawed-off double-barreled shotgun in a brown paper bag.

Defendant did not testify before the jury. However, he offered John Danny Sparks, nineteen years old, as a witness. Sparks testified that he lived in the town of Hudson near Hickory, N.C. On 31 May 1980 he met defendant Anthony Jones at a washerette on Highway 87 near Fort Bragg around 10 o'clock at night. Anthony Jones was washing some sheets. They struck up a conversation. Jones' car was parked next to the house in front of the laundromat. Defendant had a sawed-off double-barreled shotgun, and while they talked about it being an unlawful weapon to own and discussed disassembling it, "that girl out there kept coming in from the house to her car and she didn't look bad no way and we sort of kept our minds on her a little bit." Sparks later learned her name was Whittaker. When defendant took the gun out of the brown paper bag and then put it back inside the bag, the butt end was sticking out. Finally, after Ms. Whittaker had come out of the house four or five times, she walked to her car parked nearby, looked at them, and then walked back to the house. Her car was parked about fifteen feet away. Finally, she came over the defendant's car and said: "Ain't nobody home. I am lonely, you want to come over and keep me company." She was talking to defendant Jones and was on his side of the car. Jones put the shotgun back in the paper bag, handed it to Sparks, went to the girl's car and entered it.

Sparks further testified that he threw the shotgun into the back seat of Jones' car, went back into the laundromat, got the clothing belonging to him and to defendant Jones, placed his clothing and defendant's sheets in a box and went to the girl's car to tell Jones what he had done. On arrival, he discovered the girl was performing fellatio on Jones so he threw the clothes in the Jones car and left, taking his own pants and shirt and putting them in his own car. Sparks went to a service station up the road, got a drink, waited "about eleven minutes" and then returned to see if defendant and the girl had finished. When his car lights struck the car they were in, both jumped up and Sparks figured they were still busy and just "left and went back to Hudson,"

some 200 miles away. He left home the next day and returned to Georgia where he was stationed.

The next time he saw Anthony Jones was many months later after he had finished his training in Georgia, been transferred to "jump school," got out of jump school and was stationed at Fort Bragg. At that time defendant told him the girl involved had charged him with rape.

Defendant offered various members of the military establishment, all of whom testified to his good character.

Defendant was convicted on all three counts contained in the bill of indictment. He was given a life sentence for the rape, a life sentence for the first degree sexual offense, and twenty-five years for the kidnapping, all sentences to run concurrently. Defendant appealed and we allowed his motion to bypass the Court of Appeals in the kidnapping case to the end that initial appellate review in each case be had in the Supreme Court.

*Rufus L. Edmisten, Attorney General, by Guy A. Hamlin, Assistant Attorney General, for the State.*

*James R. Parish, Assistant Public Defender, for defendant appellant.*

HUSKINS, Justice.

Defendant's first three assignments of error are based on the search of his car and the introduction into evidence of a shotgun seized during that search. These assignments will be considered together.

Defendant contends the shotgun was inadmissible on grounds it was seized in violation of the Fourth Amendment to the United States Constitution. The Fourth Amendment, as one of the original eight substantive amendments forming the Bill of Rights, does not limit any power or prohibit any action of the State of North Carolina, or any of its agents. *Barron v. Baltimore,* 32 U.S. (7 Pet.) 243, 8 L.Ed. 672 (1833). The assignments of error more properly pose an alleged violation of the due process clause of the Fourteenth Amendment, which does prohibit states from participating in searches and seizures which violate the Fourth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961).

**[1]** The initial question is whether the Fourth Amendment, as incorporated by the due process clause of the Fourteenth Amendment, applies to the actions of Sergeant Welch in instructing defendant to halt and step back from the Toyota with his hands in plain view. Defendant was not free to leave when Sergeant Welch directed him to stop. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio,* 392 U.S. 1, 16, 20 L.Ed. 2d 889, 903, 88 S.Ct. 1868, 1877 (1968). We hold the actions of Sergeant Welch constituted a seizure within the ambit of the Fourth Amendment.

The Fourth Amendment requires seizures to be reasonable. *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 45 L.Ed. 2d 607, 614, 95 S.Ct. 2574, 2578 (1975). The reasonableness of seizures less intrusive than traditional arrests depends on a balance between the public interest and the individual's right to personal security. *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 54 L.Ed. 2d 331, 336, 98 S.Ct. 330, 332 (1977). Brief detention for questioning need not be based on probable cause to believe an individual is involved in criminal activity — the standard for a traditional arrest. Instead, the detention may be grounded on "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas,* 443 U.S. 47, 51, 61 L.Ed. 2d 357, 362, 99 S.Ct. 2637, 2641 (1979).

Sergeant Welch's initial stopping of the defendant satisfied this constitutional requisite. His action was based on several factors. He observed an unoccupied vehicle parked in the travel lane of a public road at 11:45 p.m. with its lights off and motor running. While turning to investigate, he noticed a man running from a closed business toward the car. The man opened the car door and placed something on the back seat. These objective facts support a reasonable suspicion that the individual was involved in criminal activity. Where the totality of circumstances affords an officer reasonable grounds to believe criminal activity is afoot, he may temporarily detain a suspect. *State v. Buie,* 297 N.C. 159, 162, 254 S.E. 2d 26, 28, *cert. denied,* 444 U.S. 971, 62 L.Ed. 2d 386, 100 S.Ct. 464 (1979); *State v. Streeter,* 283 N.C. 203, 210, 195 S.E. 2d 502, 507 (1973). See *State v. Allen,* 282 N.C. 503, 194 S.E. 2d 9 (1973), for detention of suspects based on grounds similar to those in the case *sub judice.* Therefore, Sergeant Welch did not violate

defendant's constitutional rights by instructing him to halt and step away from his car.

Since our analysis is based on the initial detention of defendant and whether there was a reasonable suspicion he was involved in criminal activity, we find it unnecessary to determine whether Sergeant Welch had probable cause to arrest him. We therefore have no occasion to consider whether Sergeant Welch searched the interior of defendant's vehicle incident to a lawful arrest within the scope of the recent decision of *New York v. Belton*, --- U.S. --- , 69 L.Ed. 2d 768, 101 S.Ct. 2860 (1981).

[2] After Sergeant Welch approached defendant's car, he shined his flashlight into the back seat. He observed the sawed-off butt of a shotgun protruding from a brown paper bag wedged between the seat cushions. Possession of such a weapon is unlawful. G.S. 14-288.8(c)(3). The shotgun thus constituted contraband, which may be seized by an officer who has observed it in plain view from a vantage point he has legally obtained. *Harris v. United States*, 390 U.S. 234, 236, 19 L.Ed. 2d 1067, 1069, 88 S.Ct. 992, 993 (1968); *State v. Smith*, 289 N.C. 143, 150, 221 S.E. 2d 247, 252 (1976). Since Sergeant Welch had the authority to detain defendant temporarily, he violated no constitutional rights in seizing an illegal weapon he observed upon approaching defendant.

The trial court's conclusions of law were thus supported by the evidence, and the court did not err in denying defendant's motion to suppress the shotgun.

Defendant abandoned his fourth and fifth assignments of error.

[3] Defendant's sixth and seventh assignments are based on the failure of the trial court to submit second degree rape and second degree sexual offense as permissible verdicts. These issues will be consolidated for discussion.

The elements of first degree rape as applicable to this case are as follows: (1) vaginal intercourse, (2) against the will and without the consent of the victim, (3) using force sufficient to overcome any resistance of the victim, (4) effected through the employment or display of a dangerous or deadly weapon. G.S. 14-27.2(a)(1)a. Second degree rape includes the first three of these elements, but there is no requirement of use of a dangerous or

deadly weapon. G.S. 14-27.3(a)(1). The elements of first degree sexual offense are (1) a sexual act, (2) against the will and without the consent of the victim, (3) using force sufficient to overcome any resistance of the victim, (4) effected through the employment or display of a dangerous or deadly weapon. G.S. 14-27.4(a)(1)a. Second degree sexual offense includes the first three of these elements, but there is no requirement of use of a dangerous or deadly weapon. G.S. 14-27.5(a)(1).

Defendant contends that since his witness John Danny Sparks testified that he had defendant's shotgun while defendant was with Ms. Whittaker, the court should have given an instruction on second degree rape and second degree sexual offense. This argument is based on *State v. Drumgold,* 297 N.C. 267, 254 S.E. 2d 531 (1979). Defendant's reliance on *Drumgold* is misplaced.

In *Drumgold,* we granted a new trial because the trial court had erroneously failed to instruct the jury regarding second degree rape. Drumgold had presented evidence that he did not have a gun on the day in question. This contradicted the evidence of the State's witness that he used a pistol to overcome her resistance. We ruled that although a "trial court need not submit lesser degrees of a crime to the jury 'when the State's evidence is positive as to each and every element of the crime charged *and there is no conflicting evidence relating to any element of the charged crime,'*" the lesser included offense should have been submitted because there was conflicting evidence on an essential element of the crime charged. *Id.* at 271, 254 S.E. 2d at 533.

An implicit underlying factor in the decision in *Drumgold* was that the lesser included offense was supported by the evidence. The defendant had "threatened to kill" the victim, and "she had what appeared to be an abrasion on the left side of her face." *Id.* at 271-72, 254 S.E 2d at 533. From this evidence the jury could have inferred the victim submitted to Drumgold because of fear or duress. Submission to sexual intercourse because of fear, duress or force other than the display or employment of a dangerous or deadly weapon is second degree rape. G.S. 14-27.3(a)(1).

The rule that no instruction on lesser included offenses is required unless the lesser offense is supported by evidence has long been the law in North Carolina. "The trial court is required to

submit lesser included degrees of the crime charged in the indictment when and only when there is evidence of guilt of the lesser degrees." *State v. Simpson,* 299 N.C. 377, 381, 261 S.E. 2d 661, 663 (1980); *State v. Griffin,* 280 N.C. 142, 185 S.E. 2d 149 (1971); *State v. Smith,* 201 N.C. 494, 160 S.E. 577 (1931). The presence of such evidence is the determinative factor. 299 N.C. at 381, 261 S.E. 2d at 663; *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545 (1954).

The principle articulated in *Drumgold* is subject to this long-standing rule. Where there is conflicting evidence as to an essential element of the crime charged, the court should instruct the jury with regard to any lesser included offense *supported by any version of the evidence.* If the lesser included offense is not supported by the evidence, it should not be submitted, regardless of conflicting evidence.

To illustrate, suppose both the State's and defendant's evidence in a first degree rape prosecution shows defendant had a deadly weapon. Defendant's sole defense is that the victim consented. Even though there is conflicting evidence as to an essential element of the crime charged, *i.e.,* consent, the court should not give an instruction on second degree rape. No evidence indicates the defendant used any force other than a deadly weapon to overcome resistance of the victim. *See State v. Hunter,* 299 N.C. 29, 261 S.E. 2d 189 (1980).

The result is no different here. Although evidence conflicts on the issue of the presence of the shotgun, there is no evidence defendant used any force other than the shotgun. "I willingly had oral sex with Mr. Jones in the car knowing that he had a weapon, yes." If the jury found defendant did not have the shotgun, it would have to find him not guilty on grounds the victim consented. There is no evidence of force such as that shown by the abrasions and threats in *Drumgold.* 297 N.C. at 271-72, 254 S.E. 2d at 533.

The proposition that the jury could believe all, part or none of the evidence is of no avail to the appellant here. "[T]he jury need not accept all or none of either the state's or the defendant's evidence. It may believe only part of the evidence on either or both sides." *State v. Faircloth,* 297 N.C. 388, 398, 255 S.E. 2d 366, 372 (1979) (Exum, J., dissenting). No matter how much of either side's evidence the jury believed, it could not arrive at a conclu-

sion that defendant raped the victim using force other than the shotgun. Such a result is neither founded in the evidence nor logically inferable from the evidence. No combination of the evidence offered by both sides allows such a determination. A jury finding that defendant raped the victim using force other than the shotgun could only be reached by conjecture, speculation or surmise. Hence the trial judge was not required to submit lesser included offenses.

[4]  Defendant's eighth and final assignment of error is that the convictions of rape and kidnapping merged and he could not be punished for both under the double jeopardy clause of the Fifth Amendment, made applicable to the states by the due process clause of the Fourteenth Amendment. Defendant's contention has no merit. This very question was answered in *State v. Williams,* 295 N.C. 655, 249 S.E. 2d 709 (1978). G.S. 14-39 creates only a single offense of kidnapping, and the absence of a sexual assault is a mitigating rather than aggravating factor and results in a lesser rather than more severe sentence. *Id.* at 669, 249 S.E. 2d at 719. Therefore, there is no violation of the double jeopardy clause in considering rape as part of the crime of kidnapping and as a crime in itself.

Our review of the record impels the conclusion that defendant has had a fair trial free from prejudicial error. The verdicts and judgments must therefore be upheld.

No error.