IN THE SUPREME COURT OF NORTH CAROLINA

No. 263PA21

Filed 16 June 2023

IN THE MATTER OF: J.U.

On discretionary review pursuant to N.C.G.S. § 7A-31 from an unpublished decision of the Court of Appeals, No. COA20-812 (N.C. Ct. App. July 6, 2021) (unpublished), vacating in part an adjudication order entered on 12 February 2020 and vacating a disposition order entered on 16 July 2020 by Judge Rebecca Blackmore in District Court, Cumberland County. Heard in the Supreme Court on 26 April 2023.

*Joshua H. Stein, Attorney General, by Janelle E. Varley, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Heidi Reiner, Assistant Appellate Defender, for juvenile-appellee.*

BERGER, Justice.

We address here the jurisdictional sufficiency of allegations in a juvenile delinquency petition. Just as "it is not the function of an indictment to bind the hands of the State with technical rules of pleading," *State v. Williams*, 368 N.C. 620, 623 (2016) (quoting *State v. Sturdivant*, 304 N.C. 293, 311 (1981)), the plain language of N.C.G.S. § 7B-1802 does not require the State in a juvenile petition to aver the elements of an offense with hyper-technical particularity to satisfy jurisdictional concerns. Because the juvenile petition sufficiently pled the offense of misdemeanor

sexual battery and provided adequate notice to the juvenile, the pleading requirements of N.C.G.S. § 7B-1802 were satisfied. We reverse the decision of the Court of Appeals.

## I. Background

A juvenile petition alleged that J.U. had committed misdemeanor sexual battery against B.A., a classmate.[1] J.U. and B.A. became friends when they were in seventh grade. In the fall of their eighth-grade year, J.U. snapped B.A.'s bra strap, prompting her to yell at him and draw the attention of their teacher. Thereafter, as part of the investigatory process, B.A. submitted an initial written statement which detailed the incident. Two other students submitted written statements, one of which described a separate incident in which J.U. had touched B.A. on her buttocks, breasts, and vaginal area. B.A. also submitted a second statement detailing inappropriate touching by J.U. B.A. testified that she did not report these actions to the school because she did not think anyone else witnessed the events and feared that she would not be believed.

On 6 November 2019, the State filed a juvenile petition, which the State later dismissed. On 9 January 2020, the State filed three additional juvenile petitions alleging that J.U. committed simple assault and sexual battery. One of the juvenile petitions alleging sexual battery was later dismissed by the trial court. The other sexual battery petition specifically alleged that "the juvenile did unlawfully, willfully

---

[1] Initials are used to refer to juveniles pursuant to N.C. R. App. P. 42(b).

engage in sexual contact with [B.A.] by touching [her] vaginal area, against the victim[']s will for the purpose of sexual gratification." Prior to the adjudication hearing, J.U. waived the formal reading of the petitions and entered a plea of not guilty. J.U. did not object to the language of the sexual battery petition, nor did he move to dismiss due to a deficiency in the charging document.

On 12 February 2020, the Honorable Rebecca Blackmore of the District Court, Cumberland County, adjudicated J.U. delinquent for simple assault and sexual battery. The trial court entered a Level II disposition order, and J.U. was required to complete twelve months of probation and up to fourteen twenty-four-hour periods of secure custody in addition to fulfilling certain other requirements.

J.U. timely appealed to the Court of Appeals, arguing that: (1) the juvenile petition charging sexual battery was "fatally defective in failing to allege the necessary element of force"; (2) the State "failed to present sufficient evidence of all elements of sexual battery"; (3) his trial counsel committed per se ineffective assistance of counsel by "conceding guilt to simple assault" without the trial court conducting a colloquy with J.U. to determine "whether the concession was knowing and voluntary"; and (4) the disposition order lacked "findings of fact sufficient to support the punishment imposed." *In re J.U.*, No. COA20-812, slip op. at 1–2 (N.C. Ct. App. July 6, 2021).

In analyzing the charging language in the juvenile petition, the Court of Appeals determined that "[a]s with criminal indictments, a juvenile petition 'is

subject to the same requirement that it aver every element of a criminal offense, with sufficient specificity that the accused is clearly apprised of the conduct for which he is being charged.' " *Id.* at 6 (quoting *In re S.R.S.*, 180 N.C. App. 151, 153 (2006)). Further, the Court of Appeals stated that the element of force in the sexual battery statute was defined as "force applied to the body," *id.* at 7 (quoting *State v. Scott*, 323 N.C. 350, 354 (1988)), and that element was "present if the defendant use[d] force sufficient to overcome any resistance the victim might make." *Id.* (quoting *State v. Brown*, 332 N.C. 262, 267 (1992)).[2]

The Court of Appeals relied on *State v. Raines*, 72 N.C. App. 300 (1985), to conclude that the allegation in the petition that J.U. touched B.A.'s vaginal area against her will "does not, standing alone, disclose that he accomplished that act through an application of force to her body sufficient to overcome any resistance the victim might make." *In re J.U.*, slip op. at 7 (cleaned up). The Court of Appeals therefore vacated the lower court's adjudication order in part and disposition order in whole, holding that the juvenile petition charging J.U. with sexual battery "was fatally defective and failed to invoke the trial court's jurisdiction over the petition." *Id.* at 15.

On 4 May 2022, this Court allowed the State's petition for discretionary review

---

[2] The Court of Appeals did not address the juvenile's arguments concerning sufficiency of the evidence or the contents of the trial court's disposition order; however, the case was remanded to the trial court for an evidentiary hearing on the ineffective assistance of counsel claim.

under N.C.G.S. § 7A-31 to determine a single issue: whether the Court of Appeals erred in holding that the sexual battery petition was fatally defective and failed to invoke the trial court's jurisdiction.

## II.    Analysis

### A.  Pleading Standards

The district court division "has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be delinquent."  N.C.G.S. § 7B-1601(a) (2021). Generally, a delinquent juvenile is an individual under the age of eighteen but over the age of ten who "commits a crime or infraction under State law or under an ordinance of local government."  N.C.G.S. § 7B-1501(7) (2021).

A juvenile petition is the pleading in a juvenile delinquency proceeding. N.C.G.S. § 7B-1801 (2021).  To properly allege that a juvenile is a delinquent juvenile, and thus under the court's jurisdiction, juvenile petitions must "contain a plain and concise statement, without allegations of an evidentiary nature, asserting facts supporting every element of a criminal offense and the juvenile's commission thereof with sufficient precision clearly to apprise the juvenile of the conduct which is the subject of the allegation."  N.C.G.S. § 7B-1802 (2021).

The General Assembly has instructed that the statutes related to juvenile delinquency are to be "interpreted and construed":

>     (1) To protect the public from acts of delinquency.
>
>     (2) To deter delinquency and crime, including patterns of
>         repeat offending:

    a. By providing swift, effective dispositions that emphasize the juvenile offender's accountability for the juvenile's actions; and

    b. By providing appropriate rehabilitative services to juveniles and their families.

(3) To provide an effective system of intake services for the screening and evaluation of complaints and, in appropriate cases, where court intervention is not necessary to ensure public safety, to refer juveniles to community-based resources.

(4) To provide uniform procedures that assure fairness and equity; that protect the constitutional rights of juveniles, parents, and victims; and that encourage the court and others involved with juvenile offenders to proceed with all possible speed in making and implementing determinations required by this Subchapter.

N.C.G.S. § 7B-1500 (2021).

While juvenile delinquency proceedings are not "criminal prosecutions," *In re Burrus*, 275 N.C. 517, 529 (1969), the General Assembly utilized nearly identical language to describe the necessary content of juvenile petitions and criminal pleadings. *Compare* N.C.G.S. § 7B-1802, *with* N.C.G.S. § 15A-924(a)(5) (2021). Our appellate courts have long held that petitions alleging delinquent acts "serve[ ] essentially the same function as an indictment." *In re S.R.S.*, 180 N.C. App. at 153 (quoting *In re Griffin*, 162 N.C. App. 487, 493 (2004)). Despite obvious procedural differences in the issuance of a juvenile petition and a true bill of indictment, "juvenile petitions are generally held to the standards of a criminal indictment." *Id.* (quoting

*In re B.D.W.*, 175 N.C. App. 760 (2006)).

Criminal pleadings, including indictments, are:

> [S]ufficient in form for all intents and purposes if [they] express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality of refinement, if in the bill of proceeding, sufficient matter appears to enable the court to proceed to judgment.

N.C.G.S. § 15-153 (2021).

It is well-established that "it would not favor justice to allow [a] defendant to escape merited punishment upon a minor matter of form." *Sturdivant*, 304 N.C. at 311. This Court has been consistent in retreating from the highly technical, archaic common law pleading requirements which promoted form over substance:

> "[I]t is not the function of an indictment to bind the hands of the State with technical rules of pleading," and . . . we are no longer bound by the "ancient strict pleading requirements of the common law." Instead, contemporary criminal pleading requirements have been "designed to remove from our law unnecessary technicalities which tend to obstruct justice."

*Williams*, 368 N.C. at 623 (first quoting *Sturdivant*, 304 N.C. at 311, then quoting *State v. Freeman*, 314 N.C. 432, 436 (1985)). "An indictment need not conform to any technical rules of pleading but instead must satisfy both . . . statutory strictures . . . and the constitutional purposes which indictments are designed to satisfy," i.e., notice sufficient to prepare a defense and to protect against double jeopardy. *State v.*

*Oldroyd*, 380 N.C. 613, 617 (2022) (cleaned up).[3]

Initially, we observe that the plain language of "N.C.G.S. § 15A-924 does not require that an indictment contain any information beyond the specific facts that *support* the elements of the crime." *State v. Rambert*, 341 N.C. 173, 176 (1995) (emphasis added); *see also Sturdivant*, 304 N.C. at 309 (declaring that an indictment must set forth "a lucid prosecutive statement which factually particularizes the essential elements of the specified offense").

Moreover, the common law rule that defective indictments rob a court of jurisdiction is "an obsolete rule that detrimentally impacts the administration of justice in our State." *State v. Rankin*, 371 N.C. 885, 919 (2018) (Martin, C.J., dissenting). Persuasively noting that jurisdictional concerns were a "relic of the code pleading era," *id.* at 906, Chief Justice Martin's dissent in *Rankin* thoroughly recounted the history of criminal pleadings, ultimately concluding that because "our criminal law and procedure became 'hopelessly outdated,' " *id.* at 908, (quoting *Legislative Program and Report to the General Assembly of North Carolina by the Criminal Code Commission*, at i (1973)), by 1974, legislative reforms, including the adoption of N.C.G.S. § 15A-924, evolved from requiring elemental specificity to a more simplified requirement that indictments allege "facts supporting each essential

---

[3] Here, J.U.'s counsel conceded that the petition at issue provided adequate notice. Thus, the only question remaining is whether the petition satisfied relevant statutory strictures. *See* Oral Argument at 44:24, In re J.U. (No. 263PA21) (Apr. 26, 2023), https://www.youtube.com/watch?v=HqMqqgKRxFI (last visited May 10, 2023).

element of the charged offense." *Id*. (citing N.C.G.S. § 15A-924(a)(5) (2017)).

Consistent with a proper understanding of indictment jurisprudence and the express language of N.C.G.S. § 7B-1802, a juvenile petition "does not have to state every element of the offense charged," so long as the elements are "clearly inferable from the facts, duly alleged." *State v. Jordan*, 75 N.C. App. 637, 639, *cert. denied*, 314 N.C. 544 (1985). Stated differently, magic words are not required; all that is required by N.C.G.S. § 7B-1802 and our precedent concerning criminal pleadings is that the charging document contain factual allegations supporting the elements of the crime charged.

"It is generally held that the language in a statutorily prescribed form of criminal pleading is sufficient if the act or omission is clearly set forth so that a person of common understanding may know what is intended." *State v. Coker*, 312 N.C. 432, 435 (1984). Indeed, "[t]he purpose of a juvenile petition is to clearly identify the crime being charged and should not be subjected to hyper[-]technical scrutiny with respect to form." *In re D.S.*, 197 N.C. App. 598, 601–02 (2009) (cleaned up), *rev'd in part on other grounds*, 364 N.C. 184 (2010). As with criminal pleadings, "[n]o provision of Chapter 7[B] mandates that flawed [petitions] have the effect of depriving the trial court of jurisdiction," *Rankin*, 371 N.C. at 911 (Martin, C.J., dissenting), and such a reading would be inconsistent with N.C.G.S. § 7B-1500.

## B. Sufficiency of the Petition

The crime of sexual battery is committed when any person, "for the purpose of

sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person . . . [b]y force and against the will of the other person." N.C.G.S. § 14-27.33(a) (2021). The petition here alleged that J.U. "unlawfully [and] willfully engage[d] in sexual contact with [B.A.] by touching [her] vaginal area, against the victim[']s will for the purpose of sexual gratification."

The Court of Appeals below relied on this Court's statement that the force element "is present if the defendant uses force sufficient to overcome any resistance the victim might make," *In re J.U.*, slip op. at 7 (quoting *Brown*, 332 N.C. at 267), to conclude that the allegation that J.U. "touched B[.A.] does not, standing alone, disclose that he accomplished that act through an application of force to her body sufficient to overcome any resistance the victim might make." *Id.* (cleaned up). In so doing, the Court of Appeals viewed the pleading requirements of N.C.G.S. § 7B-1802 through a hyper-technical lens not intended by the plain language of the statute and routinely cautioned against by this Court.

Although the term "by force" is not defined in the relevant statutory scheme, this Court has stated that " '[p]hysical force' means force applied to the body." *Scott*, 323 N.C. at 354. Further, the "requisite force may be established either by actual, physical force or by constructive force in the form of fear, fright, or coercion." *Brown*, 332 N.C. at 267 (quoting *State v. Etheridge*, 319 N.C. 34, 45 (1987)).

In *Brown*, the defendant "entered [a] hospital in which the victim was a patient[,] . . . pushed open the door of the victim's hospital room[,] . . . pulled back the

bedclothes on the victim's bed, pulled up her gown, [and] pulled down her panties" before sexually assaulting her. *Id.* at 270. The Court of Appeals reversed the defendant's conviction for second-degree sexual offense after concluding that "no substantial evidence was introduced at trial to support a reasonable finding that the defendant . . . used force in the commission of the offense charged." *Id.* at 265.

Because this Court concluded that the evidence presented in *Brown* "tended to show the defendant used actual physical force surpassing that inherent in the sexual act he committed upon the victim," we reversed the decision of the Court of Appeals. *Id.* at 269. However, this Court left open the question of whether the "physical force which will establish the force element of a sexual offense may be shown simply through evidence of the force inherent in the sexual act at issue," and we "expressly defer[red] any decision on that question until we [we]re presented with a case which requires its resolution." *Id.*

Put simply, the question this Court declined to answer in *Brown* was whether "physical force" is present when an assailant engages in unlawful, nonconsensual sexual contact with a victim, or whether "physical force" requires some level of force beyond the unlawful, nonconsensual touching itself. Here, J.U. argues that the petition was fatally defective because it "did not allege physical force" and therefore, the trial court was deprived of jurisdiction.

However, just as "common sense dictates that one cannot unlawfully kidnap or unlawfully restrain another with his consent," *Sturdivant*, 304 N.C. at 310, one

cannot engage in nonconsensual sexual contact with another person without the application of some "force," however slight. *See Scott*, 323 N.C. at 354; *Brown*, 332 N.C. at 267.

The petition here alleged that J.U. "engage[d] in sexual contact with [B.A.] by touching [her] vaginal area, against the victim[']s will for the purpose of sexual gratification." By alleging that J.U. touched B.A.'s vaginal area without her consent, the petition asserted a fact from which the element of force was, at the very least, "clearly inferable," *Jordan*, 75 N.C. App. at 639, such that "a person of common understanding may know what [wa]s intended." *Coker*, 312 N.C. at 435. Thus, the factual allegations in the juvenile petition supported each element of misdemeanor sexual battery. The petition, therefore, complied with statutory pleading standards, and no jurisdictional defect existed.

The Court of Appeals erred in requiring a rote repetition of the elements of the offense of misdemeanor sexual battery rather than analyzing the ultimate question of whether the element of force was clearly inferable from the facts alleged in the petition. We reverse the decision of the Court of Appeals and remand this matter to the Court of Appeals for determination of the issues not considered in its previous decision.

REVERSED AND REMANDED.

Justice EARLS dissenting.

It stands to reason that our laws must serve to protect people from unwanted touching, sexual assault, and unwanted sexual advances in general. This is especially true in the case of a minor victim, who through qualities inherent to childhood is rendered particularly vulnerable. In a perfect world, our laws would provide this protection through a victim-centered legal framework that emphasizes the victim's sexual autonomy over the perpetrator's intent. Under this framework, the focus would not be on whether the perpetrator used force or intended to hurt the victim. Rather, the focus would be on whether the actions taken by the perpetrator were welcome and whether in taking those actions the perpetrator violated the victim's freedom to choose not to consent to that action. However, this is not the choice our General Assembly has made.

In North Carolina, our legislature has determined that force is required to commit sexual battery. N.C.G.S. § 14-27.33(a) (2021).[1] Thus, any petition alleging sexual battery must provide facts supporting this element of the offense. N.C.G.S. § 7B-1802 (2021). While North Carolina is not alone in requiring force as an element of sexual battery, *see, e.g.,* Tenn. Code Ann. § 39-13-505 (West 2021); Ind. Code Ann. §

---

[1] To be clear, North Carolina's sexual battery statute requires the use of force unless the victim has "a mental disability[, is] mentally incapacitated or physically helpless, and the person performing the act knows or should reasonably know that the other person has a mental disability or is mentally incapacitated or physically helpless." N.C.G.S. § 14-27.33(a)(2).

35-42-4-8 (West 2014), other states have determined that force is not necessary to commit this offense, *see, e.g.*, Utah Code Ann. § 76-9-702.1 (West 2023); Miss. Code. Ann. § 97-3-95 (West, Westlaw through 2023 Regular Session effective through April 21, 2023); Kan. Stat. Ann. § 21-5505 (West 2021). Thus, if the General Assembly had wanted to, it could have written a statute similar to those in effect in Utah, Mississippi, and Kansas. However, "make no mistake: [the General Assembly] wrote the statute it meant to." *Sackett v. EPA*, No. 21-454, 2023 WL 3632751, at *29 (U.S. May 25, 2023) (Kagan, J., concurring in the judgment). Today the majority chooses to override that legislative choice. *Cf. West Virginia v. EPA*, 142 S. Ct. 2587, 2628 (2022) (Kagan, J., dissenting) (admonishing the majority for "overrid[ing]" Congress's legislative choice to grant the EPA the power to curb emission of greenhouse gases).

In 2015, the previous sexual battery statute, N.C.G.S. § 14-27.5(a), was recodified as N.C.G.S. § 14-27.33, which is the version of the statute in effect today. While changes were made to other areas of the statute, the requirement that sexual battery be "[b]y force and against the will of the other person" remained the same. *Compare* N.C.G.S. § 14-27.5(a) (2015), *with* N.C.G.S. § 14-27.33 (2021). Furthermore, our Court has long held that we are to "presume that [when enacting a statute] the Legislature [chooses] its words with due care." *C Invs. 2, LLC v. Auger*, 383 N.C. 1, 10 (2022) (citing *Sellers v. Friedrich Refrigerators, Inc.*, 283 N.C. 79, 85 (1973)). Yet by determining that J.U.'s petition was sufficient to plead sexual battery, despite failing to include facts supporting the necessary element of force, the majority's

opinion "alters . . . the statute [the General Assembly] drafted." *See Sackett*, 2023 WL 3632751, at \*29 (Kagan, J., concurring in the judgment). Accordingly, I disagree with the majority that J.U.'s petition was sufficient to plead misdemeanor sexual battery under North Carolina law. I agree with the Court of Appeals that J.U.'s adjudication and disposition must be vacated because the State's petition failed to allege all necessary elements of the offense. *See In re J.U.*, No. COA20-812, slip op. at 5 (N.C. Ct. App. July 6, 2021) (unpublished). Thus, I respectfully dissent.

It is well established that a delinquency proceeding is not a criminal prosecution. *In re Burrus*, 275 N.C. 517, 529 (1969). Unlike the North Carolina Criminal Procedure Act, our Juvenile Code specifically identifies the rehabilitation of juveniles as one of its primary purposes. N.C.G.S. § 7B-1500 (2021). Similarly, this Court's own precedent explains that "[i]n the Juvenile Code, the General Assembly enacted procedural protections for juvenile offenders with the aim that delinquent children might be rehabilitated and reformed and become useful, law-abiding citizens." *State v. Dellinger*, 343 N.C. 93, 96 (1996). Consistent with these principles, "[t]he state has a *greater* duty to protect the rights of a respondent in a juvenile proceeding than in a criminal prosecution." *State v. Fincher*, 309 N.C. 1, 24 (1983) (Martin, J., concurring in result). Accordingly, our Court "shall" protect "[t]he right to written notice of the facts alleged in the petition" in order "to assure due process of law." N.C.G.S. § 7B-2405 (2021); *see also* N.C. Const. art. I, § 23 (identifying the rights of the accused, including "the right to be informed of the accusation").

In delinquency proceedings, notice must "set forth the alleged misconduct with particularity" and identify "the specific issues [the juvenile] must meet." *In re Gault*, 387 U.S. 1, 33–34 (1967). Accordingly, our state statute requires a delinquency petition to contain "a plain and concise statement, without allegations of an evidentiary nature, asserting facts supporting every element of a criminal offense and the juvenile's commission thereof with sufficient precision clearly to apprise the juvenile of the conduct which is the subject of the allegation." N.C.G.S. § 7B-1802. Under subsection 14-27.33(a), sexual battery occurs, in pertinent part, when a person "for the purpose of sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person . . . [b]y force and against the will of the other person." N.C.G.S. § 14-27.33(a). Because force is an element of sexual battery, it must be pled alongside "facts supporting" J.U.'s use of force. *See* N.C.G.S. § 7B-1802. The element of force "may be established either by actual, physical force or by constructive force in the form of fear, fright, or coercion." *State v. Etheridge*, 319 N.C. 34, 45 (1987). Physical force refers to force that is applied to the body, *State v. Scott*, 323 N.C. 350, 354 (1988), and "is present if the defendant uses force sufficient to overcome any resistance the victim might make[,]" *State v. Brown*, 332 N.C. 262, 267 (1992). "Constructive force is demonstrated by proof of threats or other actions by the defendant which compel the victim's submission to sexual acts." *Etheridge*, 319 N.C. at 45.

Rather than plead the necessary element of force, J.U.'s petition only alleged

that J.U. "unlawfully, willfully engage[d] in sexual contact with [B.A.] by touching [B.A.]'s vaginal area, against [B.A.'s] will for the purpose of sexual gratification." J.U.'s petition does not allege the use of physical or constructive force, nor does it allege that J.U. used "threats or other actions . . . which compel[led] [B.A.'s] submission to sexual acts." *Id*. Additionally, the allegation that J.U. "touch[ed] [B.A.]'s vaginal area" does not, standing alone, show that J.U. accomplished this act by any application of physical force or force to B.A.'s body "sufficient to overcome any resistance [B.A.] might make." *Brown*, 332 N.C. at 267. In short, the indictment does not allege facts supporting the required element of force.

Furthermore, while the petition alleges that J.U. acted "against [B.A.'s] will," acting against the will of the victim and acting with force are not synonymous, and the law draws a distinction between both actions. *See State v. Jones*, 304 N.C. 323, 330 (1981) (stating the four elements of first degree sexual offense are: "(1) a sexual act, (2) against the will and without the consent of the victim, (3) using force sufficient to overcome any resistance of the victim, [and] (4) effected through the employment or display of a dangerous or deadly weapon."); *State v. Alston*, 310 N.C. 399, 407 (1984) ("[S]econd degree rape involves vaginal intercourse with the victim both by force and against the victim's will."). Moreover, a petition that only alleges the victim was "touch[ed]" is not sufficient to meet the necessary element of force as required under North Carolina's sexual battery statute. *See* N.C.G.S. § 14-27.33(a). Thus, because J.U.'s petition did not contain "a plain and concise statement . . . asserting

facts supporting every element of a criminal offense and the juvenile's commission thereof," his delinquency petition was fatally defective. *See* N.C.G.S. § 7B-1802.

Additionally, while the majority argues that a juvenile petition " 'does not have to state every element of the offense charged' so long as the elements are 'clearly inferable from the facts, duly alleged,' " quoting *State v. Jordan*, 75 N.C. App. 637, 639 (1985), the statutory language of section 7B-1802 and subsection 15A-924(a)(5) are not consistent with this idea. *See* N.C.G.S. §§ 7B-1802, 15A-924(a)(5) (2021). While section 7B-1802 is concerned with the standards for juvenile petitions, subsection 15A-924(a)(5) provides the standard for a criminal indictment. Both statutes use similar language to state that a juvenile petition and criminal indictment require "[a] plain and concise factual statement" that "asserts facts supporting every element" of the offense and "the defendant's [or juvenile's] commission thereof." N.C.G.S. § 15A-924(a)(5); *see also* N.C.G.S. § 7B-1802. These two statutes, both serving similar functions, do not contain any limiting language stating that a failure to "assert[ ] facts supporting every element of a criminal offense," *see* N.C.G.S. § 7B-1802, "is not ground[s] for dismissal of the charges or for reversal of a conviction." *See* N.C.G.S. § 15A-924(a)(6).

In contrast, subsection 15A-924(a)(6) states that a pleading must contain

> [f]or each count a citation of any applicable statute, rule, regulation, ordinance, or other provision of law alleged therein to have been violated. *Error in the citation or its omission is not ground for dismissal of the charges or for reversal of a conviction.*

N.C.G.S. § 15A-924(a)(6) (emphasis added). By including subsection (a)(6), the General Assembly has shown that it knows how to use such language when it intends to. The General Assembly's choice not to include similar language in section 7B-1802 or in subsection 15A-924(a)(5) shows a clear intent by the General Assembly not to excuse the failure to list facts supporting every element of an offense and instead shows that such a failure is grounds for dismissal of the allegations or reversal of an adjudication or a conviction.

It is not this Court's function to usurp the role of the legislature and change the expressed will of the General Assembly or the people of North Carolina. Indeed, this Court "may not rewrite [the General Assembly's] plain instructions because they go further than preferred." *See Sackett,* 2023 WL 3632751, at *30 (Kagan, J., concurring in the judgment). Here, those instructions mandate that "[a] petition in which delinquency is alleged shall contain a plain and concise statement . . . asserting facts supporting every element of a criminal offense." N.C.G.S. § 7B-1802. And because force is a necessary element of sexual battery, a delinquency petition alleging sexual battery must include "facts supporting" the use of force. *See id.*; N.C.G.S. § 14-27.33(a)(1).

While the majority characterizes the pleading requirements listed in section 7B-1802 as "highly technical[ ] [and] archaic[,]" those requirements are more properly characterized as constitutional procedural due process protections. Procedural due process is "a guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 125

(1990). While state action that deprives a person of " 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* As Justice Frankfurter previously noted, "[t]he history of American freedom is, in no small measure, the history of procedure." *Malinski v. New York*, 324 U.S. 401, 414 (1945) (Frankfurter, J., concurring).

In 1967, in *In re Gault*, 387 U.S. 1 (1967), the United States Supreme Court determined that constitutional due process protections applied to juvenile offenders. To ensure that our legal system is fair and just, "[d]ue process of law [acts as] the primary and indispensable foundation of individual freedom." *Id.* at 20. Furthermore, procedural due process serves to "define[ ] the rights of the individual" while also "delimit[ing] the powers which the state may exercise." *Id.* Notably, procedural due process protections allow courts to pursue the truth by "enhanc[ing] the possibility that truth will emerge from the confrontation of opposing versions [of events] and conflicting data." *Id.* at 21. Thus, while the majority appears to reduce the pleading requirements under section 7B-1802 as only requiring that notice be sufficient "to prepare a defense and to protect . . . [against] double jeopardy," *State v. Oldroyd*, 380 N.C. 613, 618 (2022), due process protections are far broader and relate to all areas of procedural fairness, *see In re Gault*, 387 U.S. at 20.

The statutory framework in section 7B-1500 is consistent with these constitutional principles and requires juvenile delinquency statutes to be "interpreted and construed so as to implement" a set of "purposes and policies."

N.C.G.S. § 7B-1500. Importantly, these statutes must be "interpreted and construed":

> (4) To provide uniform procedures that assure fairness and equity; that protect the constitutional rights of juveniles, parents, and victims; and that encourage the court and others involved with juvenile offenders to proceed with all possible speed in making and implementing determinations required by this Subchapter.

*Id.* Although the majority cites section 7B-1500, its opinion glosses over the fourth prong of the statute. But there is no "get-out-of-text-free card[,]" *see West Virginia v. EPA*, 142 S. Ct. at 2641 (Kagan, J., dissenting), and the majority cannot choose to ignore the statutory text in either section 7B-1500 or section 7B-1802.

Because section 7B-1802 requires that a delinquency petition "contain a plain and concise statement, without allegations of an evidentiary nature, asserting facts supporting every element of a criminal offense," N.C.G.S. § 7B-1802, and the petition filed against J.U. failed to include facts supporting the necessary element of force, the adjudication and disposition should be vacated. Until the North Carolina General Assembly changes the law, force is a necessary element of the offense of sexual battery and not merely a technicality that can be inferred from an act against the victim's will.

Justice MORGAN joins in this dissenting opinion.